REUBEN HOLBEIN ET AL. V. MARGARITA GARCIA DE LA GARZA ET AL.

Decided February 7, 1910.

**1.—Injunction—Appeal—Filing Transcript.**

The filing in a Court of Civil Appeals of a second transcript of a proceeding for an injunction, within fifteen days after the date of the filing with the clerk of the court of the petition with the judge's order endorsed thereon, satisfies the requirement of the statute that the transcript in such case must be filed in the appellate court not later than fifteen days after the entry of the order of the court, and obviates any objection to the first transcript on the ground that it did not affirmatively appear therefrom that it was filed in due time.

**2.—Same—Assignments of Error.**

In an appeal from the order of a judge granting a temporary injunction formal assignments of error are not necessary under the Act of 1909. (Gen. Laws, p. 354.)

**3.—Same—Practice—Notice.**

Courts of equity have the power to grant without notice a mandatory injunction, even to the extent in a proper case of restoring to the owner the possession of premises of which he has been deprived by force.

**4.—Same—Legal Remedy—Statute.**

The Act of the Thirty-First Legislature amending article 2989, Rev. Stats (Gen. Laws, 1909, p. 304) eliminates any objection to a petition for injunction on the ground that the plaintiff has an adequate remedy at law.

**5.—Same—Waste—Irreparable Injury—Pleading.**

The unlawful cutting of trees growing upon land is waste and irreparable injury, and to prevent waste is a recognized use of the writ of injunction. Therefore a petition for injunction which, besides alleging irreparable injury generally, alleges a threatened waste by the unlawful cutting of timber growing upon land, states facts showing such threatened irreparable injury as would authorize the interposition of a court of equity to prevent the same by injunction.

**6.—Mandatory Injunction—Possession of Realty—Insufficient Pleading.**

A petition for a mandatory injunction to restore to complainant the possession of land from which it was alleged that he had been ousted by force, considered, and held insufficient to warrant the issuance of such writ, either with or without notice to the defendant. It is only in extreme cases, such as seldom occur, that such a remedy can be justified before a hearing on the merits.

**7.—Prohibitory Injunction—Practice.**

It is seldom, under our equity procedure, that it is necessary to issue even a prohibitory writ of injunction without an opportunity given the defendant for a hearing. A temporary restraining order may in all cases be issued compelling immediate cessation of the threatened injury until such time as the defendant can be heard.

Appeal from the District Court of Starr County.    Tried below before Hon. W. B. Hopkins.

*G. R. Scott & Pope, W. R. Perkins* and *Kleberg & Neethe,* for appellants.—An injunction will not be granted where any statutory remedy provides a redress for the injury complained of.    Duck v. Peeler, 74 Texas, 271; Chisholm v. Adams, 71 Texas, 681.

Where statutory remedy by sequestration can be resorted to protect property and to acquire the possession of property, injunction will not be granted.    Hull v. Quest, 2 Posey U. C., 565.

There being no allegations that appellants are insolvent and no sufficient allegations as to the damage being irreparable, save the conclusion of the pleader, injunction should not be granted unless the petition shows that the property can not be restored to its original condition by money.    Nashville, C. & St. L. Ry. Co. v. M'Connell, 82 Fed., 69; Seymour v. Hill, 67 Texas, 387.

A preliminary mandatory injunction should not issue on an ex parte hearing.    The court must hear the facts.    City of Ft. Worth v. Crawford, 4 Texas Law, Rev., 120; Hall v. Chesapeake, O. & S. W. R. Co., 23 Am. Law Register, 126 (New Series); Weaver v. Toney, 50 L. R. A., 105; Bettman v. Harness, 36 L. R. A., 567.

It is fundamental error to grant a preliminary mandatory injunction without notice.    1 Pomeroy's Equity Jurisprudence, section 507, page 849, 3d ed.

*James B. Wells* and *F. W. Seabury,* for appellees.—Where irreparable injury to property is threatened, an injunction will be granted irrespective of the existence of any remedy at law.    Gen. Laws 31st Leg., First Called Session, ch. 34, amending section 3 of article 2989, Revised Statutes; Burnley v. Cook, 13 Texas, 586; Gilder v. Brenham, 67 Texas, 351; High on Injunctions, sec. 697; Pomeroy's Equitable Remedies, secs. 493, 494 and 495.

A court of equity acquiring jurisdiction will give such complete relief as the circumstances require, and will so shape its remedies as to grant all the relief necessary to the preservation of the petitioner's rights.    Joyce on Injunctions, secs. 101-103, 1392; Bussier v. Weekey, 11 Pa. Sup. Ct., 463; McGowin v. Remington, 12 Pa. St., 56, 51 Am. Dec., 584; Nutbrown v. Thornton, 10 Ves., 159.

Where the owner's right is clear and he is in peaceable possession, particularly where the possession has been long continued, a mandatory injunction will be granted to compel a person, whether trespasser or claimant under color of title, who has dispossessed him and interrupted his prior possession, to restore the premises.    Pokegama, S. P. L. Co. v. Klamath River L. Co., 86 Fed., 528; High on Injunctions, sec. 356.

A temporary injunction, mandatory or preventive, can be, and in a proper case ought to be, ordered ex parte and without notice to defendants.    Rev. Stats., arts. 2993 and 2994; Van Zile's Equity Plead. & Prac., sec. 401, pp. 599-601; Bispham's Equity, sec. 400; Pomeroy's Equity Jurisprudence, sec. 1359, note 1.

REESE, Associate Justice.—This is an appeal by defendants from an order of the district judge of the Twenty-Eighth Judicial District in vacation, granting a temporary injunction. The injunction was granted without notice, and the case is before us upon the allegations of the petition and the order of the judge thereon, together with certain assignments of error by appellants, and briefs of both parties.

After the order had been made appellants presented to the district judge an application to have the amount of the bond fixed for appeal, and this application sets out certain facts bearing upon the right of appellees to the writ, but we do not think this paper can rightly be considered by us, though the facts so alleged forcibly illustrate the impropriety of granting the writ prayed for without notice to appellants and hearing their side of the case.

We are met *in limine* by a motion to dismiss the appeal on the ground that the record does not show that it was filed within fifteen days after the entry of record of the judge's order. (Art. 2989, Rev. Stats., as amended by chap. 34, Acts First Called Session Thirty-First Leg., p. 355.) Within the fifteen days from the date of filing with the district clerk of the petition with the judge's order endorsed thereon, a second transcript was filed in this court, showing that fact. This satisfies the requirements of the statute. (Baumberger v. Allen, 101 Texas, 352.) The motion to dismiss is overruled.

The plaintiffs (appellees here) sue in the form of trespass to try title to recover of defendants 20,000 acres of land in a body, and for rents and damages, alleging special damages in cutting down trees and other acts of waste.

It was further alleged that appellees had been lawfully seized and continuously in actual, quiet and peaceable possession of the premises for more than fifteen years, using the same for pasturing their live stock, cultivating fields and raising crops, etc. That appellants, on or about September 15, 1909, "being then and there in effect naked trespassers," unlawfully, forcibly and violently seized the possession of said premises, and drove or caused to be driven out of said pasture the live stock of appellees and their tenants, and placed in the pasture their own cattle; that they molested the tenants and caused them to leave with their effects and live stock; that appellants had torn down and removed about three miles of wire fence, and moved and altered other fences, cut down timber, and committed other great waste; that appellants have kept one of appellees' tenants from watering his live stock at the wells and other watering places on the premises, and have driven the larger part of said live stock into a small corner of the pasture where they have no water, and fenced them in there by building a new fence, cutting the stock off from water; that appellants have driven out appellees' tenants in possession under contracts still in force, thus making appellees liable to a multiplicity of suits on the part of their said tenants.

So much for what appellants are charged with having done; in addition to which it is charged that they are intending and threatening to continue with force and arms to hold possession of the premises and prevent appellees and their tenants from entering upon or

using the same, and will immediately tear down and remove the fences now dividing the lands into the several pastures, and build other fences and divide the land into other pastures not suitable for the uses of appellees or their tenants; and allow the house, wells, windmills and other improvements to fall into disrepair; and cut down and convert to their own use large quantities of valuable timber, and do other waste to said land and improvements; stock the pastures with a large number of live stock, and destroy the grass now needed for the live stock of appellees and their tenants, and specially needed for the reason that the winter is now coming on and the grass urgently needed for said live stock. It is alleged that by reason of the facts stated appellees will sustain irreparable injury, for which they have no adequate remedy at law.

It was further alleged that appellants were asserting some claim of right or interest in and to said lands or some portions thereof, the exact nature of which is unknown to appellees, except that the claim is based upon a certain instrument in writing, a copy of which is attached to the petition and prayed to be considered as a part thereof. This instrument is a contract dated August 6, 1909, executed and acknowledged by Reuben Holbein and G. R. Adams, and also signed by appellees, B. de la Garza and his wife, Margarita Garcia de la Garza, the execution by them being proven by a subscribing witness. The instrument was duly recorded August 16, 1909. By this instrument appellees contracted to sell to appellants the land in controversy, 20,000 acres, for the price of $3 per acre, to be paid as follows: $1500 cash upon delivery of an abstract showing clear title satisfactory to purchasers' attorneys, the assumption of a certain mortgage for $25,000, and the balance to be paid in one, two, three, four and five years, in equal installments. The seller is to have thirty days to furnish abstract and survey the land, and the purchaser thirty days thereafter to examine abstract. $500 earnest money was paid by appellants, which was to be forfeited if they failed to comply with the contract, and to be refunded if seller so failed. With regard to this instrument it is alleged that the land is the separate property of Margarita de la Garza, wife of B. de la Garza, and that she did not acknowledge execution as by statute required, and the same is void as to her. It is further averred that Bernardo de la Garza furnished appellants with abstract of title and caused the land to be surveyed as provided in the contract, but that appellants did not approve the title within the thirty days allowed, nor pay the cash as required, and that they have never done so, and that all rights of appellants hereunder have been forfeited. The petition concludes with the following prayer:

"The premises considered, the plaintiffs pray that upon the presentation to and consideration by Your Honor of this petition you award an order to issue at once your most gracious writ of injunction herein, commanding the defendants and each of them and their and each of their counselors, solicitors, attorneys, agents, servants and employes, and all those acting under them, to immediately vacate all and every part of said lands and pastures, as hereinbefore described; and to immediately remove their cattle and live stock therefrom; and

to immediately yield and restore to plaintiffs the possession of said lands and pastures; and also enjoining and restaining said defendants and each of them, and their and each of their counselors, solicitors, attorneys, agents, servants and employes, and all those acting under them, from remaining upon or holding the possession of said lands and pastures or entering thereon, and from cutting down or destroying any trees or timber thereon, or removing any trees, timber or other things from said land, save only their aforesaid live stock or any other personal property they may have thereon; and from molesting, threatening or in any manner disturbing plaintiffs or their tenants, lessees, employes, or other persons holding or acting under them, in the quiet and peaceable possession, use, cultivation, residence upon, pasturing of live stock upon, or enjoyment of said lands and pastures and every part thereof." Then follows prayer for recovery of land and damages, removal of cloud and perpetuation of injunction.

The petition, duly sworn to, was presented to the judge on November 19, 1909, and on the same day he endorsed his order granting the injunction as prayed for upon proper bond. From this order this appeal is prosecuted.

The record does not show when the petition was presented to the judge, but the statement is. made in the brief that it was so presented on the same day that the order was made, and that this order was made without notice. These statements are not denied, and we assume that they are true.

Formal assignments of error are not required in appeals of this character. (Act 31st Leg., *supra.*) The assignments of error in the record, however, may be looked to in determining the objections made to the order. That they do not technically comply ·with the rules will not be regarded.

It is objected to the granting of the writ that it was granted without notice, and this objection is more particularly leveled at those portions thereof which are mandatory, commanding appellants to get off the premises with their movable property. In so far as this denies the power to grant without notice a mandatory injunction, even to the extent of restoring to the owner the possession of premises of which he has been deprived by forcible trespass, in a proper case, it can not be sustained. Such an injunction was sustained by this court in Jeff Chaison Townsite Co. v. McFadden, Weiss & Kyle Co., 56 Texas Civ. App., 611 (121 S. W., 719), citing authorities.

The objection that, according to the allegations of the petition, appellees have an adequate remedy at law, seems to be completely eliminated by the provisions of the Act of the Thirty-first Legislature, amending article 2989, Revised Statutes, *supra,* if, indeed, the decision of the Supreme Court, in Sumner v. Crawford (91 Texas, 129), left anything of real substance in that doctrine, under our system of blended law and equity jurisdiction in the courts.

It is further objected that it is not shown by the petition·that the apprehended injuries to the property are irreparable. It is true, as contended by appellants, that it is not sufficient when the writ of injunction is sought on this ground to merely allege that the commis-

sion of the threatened acts will result in irreparable injury, but that such facts must be stated as will show that such will be the result. (1 Joyce on Inj., sec. 139; Indian River Steamboat Co. v. East Coast Trans. Co., 10 S. R., 480.) Referring to the allegations of the petition, we can not say that some of the threatened acts of waste, such as cutting down trees, etc., do not show such irreparable injury, as that term is defined, to the freehold as would authorize the interposition of a court of equity to prevent the same by injunction. To stay waste, resulting in irreparable injury to the premises pending a suit in ejectment or in our action of trespass to try title, is a recognized use of the writ.

While, as we have stated, it is in the power of a court of equity even to go so far as, by the writ of mandatory injunction pending a trial upon the merits, to restore the *status quo* of the premises where that status has been interrupted by the forcible and violent ouster of the complaint, we do not think such use of the writ is authorized by the allegations of the petition. We must confess that we can get nothing of a substantial nature out of the allegations of the petition, other than would be appropriate to any ordinary action of trespass to try title, with added claim for rents and special damages, and an ordinary application for an injunction to prevent irreparable injury to the freehold pending the suit. We find nothing that would justify the mandatory provisions of the injunction, sweeping appellants off of their feet, as it were, by a command, without notice or a hearing, to vacate the premises with all of their movables. It is only in an extreme case, such as does not frequently occur, that such a remedy can be justified. The facts of the case, in Chaison v. McFadden, *supra*, which are fully stated in the opinion, and in Pokegama Lumber Co. v. Klamath River Lumber Co. (86 Fed., 529), are indicative of the circumstances which must exist in order to justify the use of this kind of process in an action to recover the possession of realty pending a hearing on the merits. Nothing of the kind is indicated in this petition. It is true that it is alleged that appellees have been in actual, peaceable possession for fifteen years, but that adds nothing of substance to the usual allegations in an action of trespass to try title. (Art. 5150, Rev. Stats.) Neither are the allegations that the entry of appellants was unlawful, that they were without any right, title or color of title, and are in effect naked trespassers, and that they forcibly and violently seized the possession of the premises and dispossessed appellees and their tenants, anything more than appropriate allegations in an ordinary action of trespass to try title. That appellants were trespassers, that they were without title or color of title, that appellees were in possession and were ousted by appellants, are all of the essence of the old action of ejectment, and of our action in trespass to try title. If the ouster consisted in putting the cattle of appellees and their tenants off the premises, putting their own in the pasture, this adds nothing to the force of the usual allegations of possession on the one hand and ouster on the other. It is a usual and ordinary form of pleading in cases of this character to allege that defendants with force and violence entered upon the premises and ejected plaintiffs therefrom, and with like force and violence re-

tains the possession. This is a mere legal fiction, and is so regarded. If there be any force in the use of the words that appellants are "naked" trespassers in the sense that they are without even any claim of right, a mere general and formal allegation, the reference to the contract of sale, and that appellants claim some right thereunder suggests, if it does not directly indicate, that they are not "naked" trespassers in the sense of being without claim of right. There is nothing in the petition indicative of such a state of facts as would justify or authorize the dispossession of appellants by the mandatory writ pending the trial.

It was for a long time held that such mandatory writ could not be resorted to at all for the purpose of transferring the actual possession of land pending a suit for the title and possession in any case, and although this doctrine in its strictness has been gradually departed from by courts of equity, still the doctrine remains that it is to be resorted to "only in a strong and mischievous case of pressing necessity." (Chaison v. McFadden, Weis & Kyle, *supra*.) It is not to be forgotten that, while it is alleged in the petition that appellants entered upon the premises and ousted appellees, driving out their cattle and their tenants, on the 15th of September, no resort is had to the court for relief until the 19th of November. This does not look like a prompt attempt to restore the *status quo* which had been interrupted by the actual violence of appellants, as the Chaison case and other cases there cited.

Our conclusion is, that neither with or without notice was the mandatory injunction, transferring the possession from appellants to appellees upon the facts stated in the petition, authorized.

As to the issuance of the prohibitory injunction without notice, much must be left to the sound discretion of the judge. Article 2994, Revised Statutes, provides: "Upon application for any writ of injunction, if it appears to the judge that delay will not prove injurious to either party, and that justice may be subserved thereby, he may cause notice of such application to be served upon the opposite party, his agent or attorney, in such manner as he may direct, and fix a time and place for the hearing of such application."

The petition in this case, we think, discloses no reason why notice should not have been given before the issuance of a writ so sweeping in its character as was ordered in this case. *Audi alteram partem* is one of the maxims of the old civil law, and the doctrine that a man should not be condemned without a hearing is not only the instinct of justice, but this spirit breathes through the whole system of common law, and especially through our system of equity, as distinguished from law, which seeks to temper the harshness of the common law and bring it more in harmony with the principles of abstract justice. It is rarely, under our equity procedure in regard to the issuance of injunctions, that it becomes necessary to issue a temporary writ of injunction, even a merely prohibitory writ, without a hearing. If it appears necessary from the allegations of the petition that a defendant be stopped at once, and without the delay necessary to give notice and an opportunity to be heard, temporary restraining order may in all cases be issued compelling immediate cessation of the threatened

injury until such time as may be reasonably required to allow the defendant to present his side of the case, which may change the whole aspect of the controversy. If it be said in answer that a defendant may obviate this difficulty by a motion to dissolve, wherein he may fully present his objections to the issuance of the writ, the reply is apt and conclusive that, under the peculiar rule adopted by the Legislature allowing appeals from an order granting a temporary injunction, but not to an order refusing to vacate on motion to dissolve, a defendant would ordinarily lose by lapse of time his right to appeal from the order granting an injunction if he delayed until his motion to dissolve could be heard. It is, we think, a serious omission in the law on this subject that no appeal is given from an order overruling a motion to dissolve. This court had occasion to express its views upon this defect in the statute in the Chaison case, 56 Texas Civ. App., 611 (121 S. W., 717).

In so far as the merely prohibitory features of the present case are concerned, while we are of the opinion that even that should not have been issued without notice, a temporary restraining order until a hearing upon the application for temporary injunction being all that was required to meet any possible emergency disclosed by the petition, still we do not think that the action of the judge in making the order without notice was such an abuse of judicial discretion as warrants us in vacating the prohibitory order, which will be allowed to stand. We are of the opinion, however, that the order dispossessing appellants and transferring the possession to appellees, was not authorized by the facts disclosed by the petition, assuming all of them to be true; and that portion of the injunction will be set aside and vacated.

The record does not contain a copy of the writ, but the judge's order covers all of the grounds of the prayer, and we assume that the writ follows the terms of the prayer. It is therefore ordered that, in so far as the writ of injunction restrains the appellants from cutting down or destroying any trees or timber or removing any trees, timber or other thing from said land, and from molesting or in any manner disturbing the tenants of appellees in possession of any portion of said land under existing contracts of lease or renting, in the quiet use and possession of and residence upon the same, with free access to water and pasturage for their live stock such as they are entitled to under their contracts of lease or renting, the order is affirmed, and as to all other provisions, orders and commands of said injunction the order is reversed and the injunction set aside and vacated. Costs of this appeal are adjudged against appellees.

*Affirmed in part and reversed in part.*