SOTO et al. v. STATE. (No. 411.)

(Court of Civil Appeals of Texas. El Paso. Nov. 25, 1914. Rehearing Denied Dec. 10, 1914.)

1. INTOXICATING LIQUORS (§ 274*)—DISORDERLY HOUSE—NUISANCE—ABATEMENT—WHAT CONSTITUTES—ILLEGAL SALE OF LIQUOR.

Pen. Code 1911, art. 496, defines a "disorderly house" as one where spirituous, vinous, or malt liquors are sold or kept for sale, without a license. Article 503 provides that habitual, actual, threatened, or contemplated use of any premises to keep a disorderly house shall be enjoined. *Held,* that a petition alleging defendants' possession and control of a house commonly known as the "Ureka Club and Socorro Mutua Mexicana," and that defendants were habitually using the premises as a disorderly house, and contemplate continuing such use in that therein spirituous, vinous, and malt liquors were sold in quantities of one gallon and less, to be drunk on the premises, and so kept for sale without a license to retail such liquor, and that there was no person or corporation

having a license under the law to retail liquor on the premises, was sufficient to justify an injunction against the maintenance of the place.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 410; Dec. Dig. § 274.*

For other definitions, see Words and Phrases, First and Second Series, Disorderly House.]

2. PLEADING (§ 35*)—SURPLUSAGE.

Where suit was instituted in the name of the state to enjoin the keeping of an alleged disorderly house, used for the sale of liquors, against three persons as individuals, averments of the petition that the alleged house was known as the "Ureka Club and Socorro Mutua Mexicana" were superfluous, and did not show that defendants were dispensing liquor to members of a bona fide club under circumstances dispensing with the necessity of a license.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 76–80; Dec. Dig. § 35.*]

3. INTOXICATING LIQUORS (§ 260*)—WRONGFUL SALE — CLUBS — "PERSON ENGAGED IN SELLING LIQUOR."

While a bona fide club situated in a district where liquor may lawfully be sold, organized for purposes sanctioned by law, and selling liquor to its members, and not to the public as a mere incident to its organization and without profit, is not engaged in the occupation or business of selling intoxicating liquors, under the laws of the state, and cannot be enjoined under Penal Code 1911, arts. 496, 503, providing for injunction against houses where liquor is illegally sold as disorderly houses, yet such protection does not extend to clubs not organized in good faith for purposes authorized by law but merely as a subterfuge to evade the law.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 399; Dec. Dig. § 260.*]

4. INTOXICATING LIQUORS (§ 274*)—NUISANCE —PRELIMINARY INJUNCTION—PRAYER.

Where, in a suit to enjoin a liquor nuisance as a disorderly house, the petition prayed an injunction restraining defendants from using the premises to sell spirituous, etc., liquors, and from keeping for sale therein such liquors and from selling the same on the premises, it was sufficient to justify the issuance of a preliminary injunction.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 410; Dec. Dig. § 274.*]

5. INJUNCTION (§ 143*) — PRELIMINARY INJUNCTION—EX PARTE ISSUANCE—RESTRAINING ORDER.

A preliminary injunction should not ordinarily be granted without notice; the status quo being maintained in the meantime by the issuance of a restraining order.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 315; Dec. Dig. § 143.*]

6. INTOXICATING LIQUORS (§ 274*)—NUISANCE —INJUNCTION—PETITION—VERIFICATION.

Under Pen. Code 1911, art. 505, providing that the procedure to enjoin the maintenance of a liquor nuisance as a disorderly house shall be the same as in other suits for injunction, as near as may be, except that the petition need not be verified, a verified petition is not necessary to a preliminary injunction in such cases.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 410; Dec. Dig. § 274.*]

7. INTOXICATING LIQUORS (§ 277*)—WRONGFUL · SALE — INJUNCTION — "DISORDERLY HOUSE."

Under Pen. Code 1911, art. 496, defining a "disorderly house" to be any house in which liquors are sold or kept for sale without a license, and article 503, providing that the habitual use of premises for the keeping of a disorderly house shall be enjoined, etc., an injunc-

tion restraining defendants from selling or keeping for sale spirituous, etc., liquors on the premises, was too broad; the court being only authorized to restrain defendants' use of the house for the sale of liquor without a license.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 413; Dec. Dig. § 277.*]

8. COSTS (§ 238*)—COSTS OF APPEAL—SUCCESSFUL PARTY—MODIFICATION OF JUDGMENT.

While ordinarily, on the reformation and affirmance of a judgment on appeal, the costs are taxed against the appellee, yet they may be taxed against the appellant for cause, and will be so taxed where the objectionable feature would doubtless have been corrected by the trial court had its attention been called thereto.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 908–919; Dec. Dig. § 238.*]

Appeal from District Court, El Paso County; Dan M. Jackson, Judge.

Suit by the State against Miguel Soto and others. Decree for complainant, and defendants appeal. Reformed and affirmed.

Coldwell & Sweeney, of El Paso, for appellant. W. W. Bridgers, of El Paso, Dist. Atty., for the State.

HIGGINS, J. The state of Texas by its district attorney filed suit against Miguel Soto, R. Salazar, and A. P. Brunswick, alleging: That they were in possession and control of a house in the city of El Paso, the said place being commonly known as the "Ureka Club and Socorro Mutua Mexicana," which purports to have its headquarters and place of business in said house. That defendants have been habitually using said premises as a disorderly house, and threaten and contemplate continuing to so use same; that said premises is a disorderly house in this: That therein spirituous, vinous, and malt liquors were sold in quantities of one gallon and less to be drunk on the premises and so kept for sale, without defendants having first obtained a license under the laws of this state to retail such liquors, and there is no person or corporation having a license under the law to retail liquor on said premises. An injunction was prayed restraining defendants from using said premises for the purpose of selling spirituous, vinous, or malt liquors and from keeping for sale therein such liquors and from selling same on said premises. Upon an ex parte hearing a temporary injunction was ordered issued in all things as prayed for, such injunction to be subject to the further order of the court. From this order this appeal is prosecuted.

[1] Article 496, Penal Code, defines a "disorderly house" to be "any house in which spirituous, vinous or malt liquors are sold or kept for sale, without first having obtained a license under the laws of this state to retail such liquors." Article 503, Penal Code, provides that:

"The habitual, actual, threatened or contemplated use of any premises, place, building or part thereof, for the purpose of keeping * * * a disorderly house, shall be enjoined at the suit of either the state or any citizen thereof."

And by article 505 of the Penal Code it is provided that the procedure in such cases shall be the same as in other suits for injunction, as near as may be, except that the petition need not be verified.

The facts alleged relating to the past and threatened and contemplated use of the house plainly show that such use is for purposes which bring it clearly within the definition of a disorderly house as defined above.

There are no facts stated in the petition from which it might be reasonably deduced—under other supposable facts connected with the subject—that the defendants were dispensing liquors to members of a bona fide club under circumstances which dispensed with the necessity of a license.

[2, 3] The suit is against Soto, Salazar, and Brunswick as individuals, and the averments that the alleged disorderly house is known as the Ureka Club and Socorro Mutua Mexicana, etc., are wholly superfluous. In this connection, it may be remarked that while a bona fide club, situated in a precinct, city, or town where liquor may be lawfully sold, organized for purposes permitted and sanctioned by law, and which, as a mere incident to its organization and without profit, furnished liquor to its members and not to the public generally, is not a person, under the laws of this state, engaged in the occupation or business of selling intoxicating liquors and cannot be enjoined under the provisions of the law here considered, but in respect to clubs not organized in good faith for purposes authorized by law, but merely as shifts, shields, or subterfuges, such sales would not be permitted, and under such circumstances they would and should be held to be disorderly houses and as such may be enjoined. State of Texas v. Duke, 104 Tex. 355, 137 S. W. 654, 138 S. W. 385; Adams v. State, (Cr. App.) 145 S. W. 940.

The allegations of the petition are not subject to the objection that they lack the directness, certainty, and particularity required in petitions for injunction.

[4] The fifth assignment complains of the issuance of a preliminary injunction upon the ground that it was not prayed for. The prayer in this respect was not as certain as it should have been, but, considered as a whole, it sufficiently appears that a preliminary injunction was being sought.

[5] Error is also assigned to the action of the court in granting the injunction without notice to the defendants. This was a matter within the discretion of the trial court, and, no abuse of this discretion being apparent, its action in so doing is not reversible. Commissioners, etc., v. Nichols, 142 S. W. 37; Holbein v. De La Garza, 126 S. W. 42.

In this connection, however, it is desired to express our disapproval of the practice of granting temporary injunctions without notice.

In Holbein v. De La Garza, 126 S. W. 42, it is said:

"As to the issuance of the prohibitory injunction without notice, much must be left to the sound discretion of the judge. Article 2994, Revised Statutes [1895], provides: 'Upon application for any writ of injunction, if it appears to the judge that delay will not prove injurious to either party and that justice may be subserved thereby, he may cause notice of such application to be served upon the opposite party, his agent or attorney, in such manner as he may direct, and fix a time and place for the hearing of such application.' The petition in this case, we think, discloses no reason why notice should not have been given before the issuance of a writ so sweeping in its character as was ordered in this case. 'Audi alteran partem' is one of the maxims of the old civil law, and the doctrine that a man should not be condemned without a hearing is not only the instinct of justice, but this spirit breathes through the whole system of common law and specially through our system of equity, as distinguished from law, which seeks to temper the harshness of the common law and bring it more in harmony with the principles of abstract justice. It is rarely, under our equity procedure in regard to the issuance of injunctions, that it becomes necessary to issue a temporary writ of injunction, even a merely prohibitory writ, without a hearing. If it appears necessary from the allegations of the petition that a defendant be stopped at once and without the delay necessary to give notice and an opportunity to be heard, a temporary restraining order may in all cases be issued compelling immediate cessation of the threatened injury until such time as may be reasonably required to allow the defendant to present his side of the case, which may change the whole aspect of the controversy. If it be said, in answer, that a defendant may obviate this difficulty by a motion to dissolve, wherein he may fully present his objections to the issuance of the writ, the reply is apt and conclusive that, under the peculiar rule adopted by the Legislature allowing appeals from an order granting a temporary injunction, but not to an order refusing to vacate on motion to dissolve, a defendant would ordinarily lose, by lapse of time, his right to appeal from the order granting an injunction if he delayed until his motion to dissolve could be heard. It is, we think, a serious omission in the law on this subject that no appeal is given from an order overruling a motion to dissolve."

Again, in Holman v. Cowden, 158 S. W. 571, it is said:

"Appellant also makes objection to the order granting the injunction, on the ground that it was granted without notice. As we have taken occasion to say several times, while the district judge had the power to grant an injunction without notice to the other party, it is only in the rarest cases that it is proper to do so. In every conceivable case, no matter how pressing the emergency, a temporary restraining order (well known in our practice as distinguished from a temporary injunction), restraining the defendant and preserving the status until such time as the application for temporary injunction can be heard after notice to the defendant, is all that is necessary. In this way both parties can be heard before passing upon the application, and many times a serious mistake avoided. In addition, in case of an appeal, the appellate court will have something more before it than the naked ex parte allegations of the petition. There can be no possible objection to the course here suggested; and, in the interest of justice, it is earnestly to be desired that trial judges would adopt this course."

We concur in the remarks quoted and trust the trial judges in this Supreme Judicial District will observe the rule of practice there clearly shown to be proper and desirable. It will accord much better with the spirit of our jurisprudence, which contemplates an opportunity to be heard before determining one's rights. Serious mistakes will often be avoided, and no doubt many appeals from the issuance of preliminary injunction will be obviated. The great number of appeals from orders of this nature is in large measure due, we think, to the practice of making such orders upon ex parte hearing. The distinction between a temporary injunction and a restraining order, effective only pending notice and hearing, of the application for a temporary injunction, is clearly stated in Riggins v. Thompson, 96 Tex. 154, 71 S. W. 14. See, also, upon the subject, Hartzog v. Seegar Coal Co., 163 S. W. 1055; McWilliams v. Commissioners, etc., 153 S. W. 368; Ex parte Zuccaro (Sup.) 163 S. W. 579; Cole v. Forto, 155 S. W. 350.

The Ureka Club and Socorro Mutua Mexicana are not necessary parties. As pointed out above, the averments in regard thereto may all be regarded as surplusage.

[6] Under article 505, above noted, it was not necessary that the petition in this case should be verified in order to authorize the issuance of a preliminary injunction.

[7] What has been said disposes of all assignments, except the tenth, which is to the effect that the court erred in enjoining defendants from selling or keeping for sale spirituous, vinous, and malt liquors on the premises, because under the law an injunction was only authorized to restrain the keeping of a disorderly house, i. e., a house for the sale of liquor without a license; whereas, the injunction actually issued restrains the defendants from using the premises for selling liquor even if they had or should procure a license.

An inspection of the judge's fiat and injunction issued thereon discloses that it is subject to the further order of the court, and, if it should be brought to the attention of the lower court that defendants had a license, the injunction would doubtless be dissolved. It is perhaps true, however, that the injunction granted is too broad and comprehensive in its scope, and the order of the lower court will therefore be reformed so as to meet the objection noted.

[8] Ordinarily, upon the reformation and affirmance of a judgment, the costs are taxed against the appellee. Brown v. Montgomery, 19 Tex. Civ. App. 548, 47 S. W. 803; Clark v. Cyclone, etc., 22 Tex. Civ. App. 41, 54 S. W. 392. But for cause, the same may be taxed against the appellants, and, had this objectionable feature of the order been of any importance to appellants' rights, the lower court would doubtless have corrected it, if its attention had been directed thereto. This appellants have not done. The costs will therefore be taxed against

them. See cases cited 4 Ency. Dig. of Texas Reports, pp. 1017, 1018.

Reformed and affirmed.