## ASPHALT BELT RY. CO. et al. v. UVALDE ROCK ASPHALT CO.  (No. 7095.)*

(Court of Civil Appeals of Texas. San Antonio. Nov. 21, 1923. Rehearing Denied Dec. 19, 1923.)

**1. Injunction ⟜144—Petition held insufficient to entitle plaintiff to a temporary injunction without giving railway company opportunity to be heard.**

Where, in a bill for an injunction to restrain a railway company from constructing a right of way on certain lands, under the rule construing the allegations of the petition most strongly against petitioner, and making it incumbent upon him to not only show the existence of valuable rights threatened with wrongful and immediate invasion and substantial irreparable injury, but to also negative the existence of equal or better rights in the adverse party, the allegations amounted to no more than an assertion of mineral rights in the land by petitioner, and the use by the railway company of an easement over the surface thereof for railway purposes was not so inconsistent with such ownership as to render them irreconcilable; it being proper to assume that the railway acquired the easement by condemnation or agreement as provided in Rev. St. arts. 6504, 6505, and being thus lawfully on the premises and acquiring no interest therein other than a right of way for railway purposes, held not to entitle petitioner to a temporary injunction without giving the railway company an opportunity to be heard.

**2. Injunction ⟜118(1)—Bill for injunction should state facts, not conclusions.**

In a bill for injunction, the mere conclusion or general allegations of complainant as to essentials to right to relief will not suffice; the facts must be set out in such detail that the court can determine for itself whether the allegations are well founded.

Appeal from District Court, Uvalde County; R. H. Burney, Judge.

Petition by the Uvalde Rock Asphalt Company against the Asphalt Belt Railway Company and others for a temporary injunction restraining defendants from constructing a railway on plaintiff's property. From an order granting a temporary injunction, defendants appeal. Reversed and rendered.

Boyle, Ezell & Grover, of San Antonio, John D. Wheeler, of Aransas Pass, and Mason Williams, of San Antonio, for appellants.

Martin & Martin, of Uvalde, Kampmann & Burney, of San Antonio, and Andrews, Streetman, Logue & Mobley, of Houston, for appellee.

SMITH, J. This appeal is from a temporary injunction granted at the instance of the Uvalde Rock Asphalt Company against the Asphalt Belt Railway Company, San Antonio, Uvalde & Gulf Railway Company, and A. R. Ponder, receiver of the last-named company, restraining them from proceeding further in the construction of railway tracks upon a projected right of way, across certain lands in Uvalde county. The injunction was granted by the judge of the district court of Uvalde county, on November 3, 1923, without notice to the defendants in the proceeding, and the writ was made returnable to the next term of said court, which convenes on March 24, 1924. In other words, if not set aside the injunction, although granted without notice, will remain in force by its own terms for a period of nearly six months. The merits of the appeal must be determined alone from the bill, the express allegations of which must be taken as true.

It is alleged in the bill that the defendants below (hereinafter designated as the railway company) are now constructing, and if not interrupted will complete and operate, a line of railway across the land in question, on a right of way several miles in length, and minutely described by metes and bounds, showing that for part of its length it is 50 feet wide, and the remaining part 100 feet wide. It is further alleged in detail:

"Petitioner further shows: That, as the owner of the said mineral deposits and mineral rights, on, upon and under said land, petitioner was vested with the possession and right of possession of said land, and particularly of the surface thereof, and was in actual, open and notorious possession thereof, for the purpose of all necessary and proper things to be done for the opening and developing of mines and quarries and drilling wells, and the operation thereof, for the discovery, removal and marketing of said minerals and mineral deposits, including the right of laying railroad tracks upon and over said land to provide for the handling of engines and cars for the transportation and removal of said minerals for sale and marketing and the right of placing on said lands at convenient points machinery and structures reasonably necessary and proper for the opening of mines or quarries, and the drilling of wells, and the operation of said mines, quarries and wells, and the handling, storing, transportation and disposal of the products thereof. That defendants and each of them have heretofore, to wit, on the 2d day of November, 1923, forcibly entered and trespassed upon and taken possession of the lands hereinbefore described, unlawfully without the consent of petitioner and without adequate compensation to petitioner being first made or secured; and so taking the property of petitioner without due process, or any process whatever, of law, are threatening to construct, and are in fact proceeding to construct, over and upon said lands, a railway track and, unless prevented by the orders and decrees of this court, will, as petitioner verily believes (and so believing, now charges), construct, complete and operate a railway track on and over said lands, appropriating said lands as and for a right of way for said railway track, and excluding petitioner

from the possession and enjoyment thereof, and of the said mineral, oil and gas deposits.

"And your petitioner further shows that the principal presently known mineral deposits on, upon and under said lands consist of said rock asphalt which is present in large quantities on, upon and under the lands above described; that said rock asphalt is of such a nature, and the deposits thereof so located with reference to the surface of the earth, that the only practical and feasible method of removing the same is by quarrying, or, as it is termed, strip mining the same; that is to say, by removing the surface covering of earth, stone and the like superimposed upon said mineral deposit (where said mineral deposit does not, as it sometimes does, crop out or lie exposed on the surface of the earth), by blasting steam and hand shovels and the like, and by then blasting and otherwise removing the deposit from its natural location, without the use of tunnels, shoring or subsurface digging; and that if defendants be permitted, to appropriate, hold and use said land as and for right of way for said railway track, as they are now threatening, attempting and proceeding to do, and as petitioner believes and charges they will do unless restrained by this court, petitioner will be prevented from conducting any operations for the removal of the rock asphalt deposit on, upon and under said lands.

"That petitioner owns in like manner like mineral deposits on, upon and under, and rights in, lands upon both sides of the track of land herein described (over and upon which defendants are proceeding to construct said railway track), extending the entire length of the same and for a distance to, to wit, more than 500 feet on each side thereof; that petitioner is now, and for several years last past has been, actually engaged in mining and producing said mineral deposits from its lands contiguous to said land over which defendants are proposing, threatening and proceeding to construct said railway track, and in marketing and using the same in large quantities, and will continue so to do in increasing quantities as will be required to supply the growing demand and market for the same.

"Petitioner further shows that said substance is so hard and compact that heavy blasting charges are required to break the same up into pieces convenient for handling and use, and that the said blasting process, when so carried on in the open air, is inherently dangerous to persons and property in the vicinity thereof on account of the showers of rock, stone and other hard substances thrown into the air with great violence and for great distances by the force of such blasts, and thus caused to be dropped upon and thrown against the surrounding territory, to the danger and probable damage of all persons and property in the vicinity of such operations. By reason of the necessity of mining said mineral deposit by the method aforesaid, it would be practically impossible to conduct any such mining operations within a distance of, to wit, 500 feet from any standard railroad track except at large expense, including liability for damages to said track and to the persons, equipment and traffic moving thereover, and for the insurance premiums to cover such liability; and your petitioner therefore avers that the proposed right of way of the said railway track crossing and passing over, as it does, the deposits of said mineral underlying plaintiff's said land, the natural and necessary effect of the appropriation and use thereof, for railroad purposes will be to prevent petitioner from mining, producing and selling, not only the deposit lying immediately underneath said right of way, but also all such deposits lying within 500 feet of said right of way on either side thereof, thus taking plaintiff's property and appropriating the same to' defendants' use without any compensation therefor being either paid or secured to be paid as required by law.

"Although petitioner is unable to state the exact quantity or value of the minerals belonging to it which will be so appropriated and taken from it by the construction of said track, it now alleges that said minerals and mineral deposits, which, in the event of such construction, use and operation, will be taken from plaintiff, have a value in excess of $2,000, and, unless the relief hereinbefore prayed for be granted, plaintiff will be damaged in an amount exceeding said sum.

"Relative to petitioner's right and title to the oil, gas and other mineral deposits (other than rock asphalt) on, upon and under said lands, petitioner cannot at this time make specific allegations as to location, quantity and value of the same; but petitioner is informed and believes, and, so believing, now charges, that the same are of real and substantial value, and that by the appropriation of said land by defendants for right of way petitioner will be restricted and prevented from prospecting for and developing such oil, gas and mineral deposits therein (as well as in the nearby contiguous lands), and thereby deprived of its property therein, without adequate compensation therefor being made or secured as required by law.

"Petitioner further shows that by defendants' appropriation of said right of way and the construction of said railway track thereon, petitioner will be restricted and prevented from the enjoyment of its rights in the surface of said land incident and appurtenant to its said mineral rights, to wit, the right of ingress, egress and passage over said lands, and the right of constructing tracks thereon for the movement of engines and cars for transportation and handling of its mineral products, and the right of placing and constructing thereon machinery and other structures necessary and proper for the production, handling and removal of such oil, gas and other minerals; thus depriving petitioner of its property without adequate compensation being paid or secured as required by law."

It will be observed that the asphalt company does not seek to require the railway company to construct and operate its line carefully and without negligence, so as to avoid any unnecessary injury to or interference with the asphalt company's property or operations; nor is it sought to restrain the railway company from using the premises in controversy for other than railway purposes. But it appears, in effect, that the only object sought by the asphalt company is to absolutely prohibit the railway company from constructing or operating a line of rail-

way upon the designated right of way, and ousting it therefrom.

[1, 2] In order to show itself entitled to the extraordinary remedy of injunction, and particularly so when it invoked that remedy without notice of those adversely affected thereby, it devolved upon the asphalt company to show ·by specific allegations, to be construed most strongly against it and in favor of its adversaries, that it was clearly entitled to such relief, and that its valuable rights were threatened with wrongful and immediate invasion and substantial irreparable injury. It was incumbent upon the petitioner to not only show the existence of such rights, and probable wrongful invasion thereof and substantial injury thereto, but it must go further and by affirmative allegations clearly negative the existence of facts showing equal or better rights in the adverse party. Gillis v. Rosenheimer, 64 Tex. 243; Holbein v. Garza, 59 Tex. Civ. App. 125, 126 S. W. 42; Town-Site Co. v. Norvell (Tex. Civ. App.) 187 S. W. 978; Weaver v. Emison (Tex. Civ. App.) 153 S. W. 923; King v. Driver (Tex. Civ. App.) 160 S. W. 416. The mere conclusion or general allegation of the pleader as to essentials will not suffice; the facts must be set out in such detail that the court can determine for itself whether the allegation is well founded. Dunn v. City of Austin, 77 Tex. 139, 11 S. W. 1125; Farb v. Theis (Tex. Civ. App.) 250 S. W. 290. In the Gillis Case the court quotes the appropriate rule to be:

"The petition for injunction should state all, and negative all, which is necessary to establish a right. The rule is correctly stated in Harrison v. Crumb, White & Willson's Ct. of Appeals, § 992, as follows: 'The rule of pleading, that the statements of a party are to be taken most strongly against himself, is re-enforced in injunction suits by the further requirement that the material and essential elements which entitle him to relief shall be sufficiently certain to negative every reasonable inference arising upon the facts so stated, from which it might be deduced that he might not, under other supposable facts connected with the subject, thus be entitled to relief.' "

And in the King Case the rule is thus stated:

"The rule in Texas now is established that in petitions for injunction the allegations 'must negative every reasonable inference arising upon the facts so stated, from which it might be deduced that petitioner might not under other supposable facts connected with the subject, be entitled to relief.' "

Appellee's petition must be tested by the foregoing rules of construction.

It appears from allegations in the bill that the railway company had laid out a way across the land described, had gone upon this way, and was actually engaged in constructing railway tracks thereon, when interrupted by the injunction. The asphalt company did not in its bill allege, or assert its inability to allege, by what right or color or claim of right the railway company had laid out and entered upon and was exercising an easement over the strip of land being used as a right of way. It is not affirmatively contended that the railway company had· not lawfully procured this easement from the owner of the surface, nor is this fact negatived by the allegation that the asphalt company, as the owner of the minerals and mineral rights in and upon the land, is "vested with the possession and right of possession * * * and particularly of the surface thereof, and was in actual open and notorious possession for the purpose of" opening, developing, and operating mines in the premises. When these allegations are analyzed and construed most strongly against the pleader, as they must be, they amount to no more than the assertion of the ownership of the minerals and mineral rights in the land; whereas, the use by the railway company of an easement over the surface of the land is not so inconsistent with such ownership as to render the two estates irreconcilable, as the asphalt company in effect contends. If it does—assuming that the parties are rightful owners of the respective estates claimed by them— then the asphalt company must yield to the railway company. Davidson v. Ry. (Tex. Civ. App.) 194 S. W. 211; Olive v. Ry., 11 Tex. Civ. App. 208, 33 S. W. 139.

Further analyzing the bill, it is asserted in general terms that the railway company has "forcibly entered and trespassed upon and taken possession of the lands, "unlawfully and without the consent" of the asphalt company, and without first compensating it therefor, and is "taking the property of petitioner without due process or any process whatever of law." These are, after all, but the conclusions of the pleader, and perhaps should for that reason be disregarded. But those conclusions are discredited by the facts shown elsewhere in the bill that the asphalt company does not own the surface of the land, but owns only the minerals and mineral rights therein, and the railway company seeks only to occupy a narrow strip of the surface, without disturbing the minerals thereunder, so far as the bill shows to the contrary; and the bill fails to negative the hypothesis that the railway company has complete title to the easement upon the surface of the land.

So, in view of the affirmative allegations, when considered in connection with omitted allegations, and applying the rules of construction heretofore invoked, we may assume that, although the asphalt company now owns the minerals and mineral rights in the strip of land sought to be used by the railway company as its right of way, the latter owns an easement over said land for such purpose. We may properly go a step further and assume that the railway company acquired

such easement in the manner provided by law, that is, by condemnation or agreement, under articles 6504, 6505, R. S., and being thus lawfully upon and in possession of the premises in question, for the purposes of its corporate creation, the railway company may not be ousted by the harsh remedy invoked here. Certainly it will not be disturbed in such lawful possession until it is given an opportunity to be heard in defense of its rights, whatever they are.

If we are correct in assuming that the railway company acquired the asserted easement in the manner provided by law, then nothing more was thereby conferred upon the company than an easement, together with such materials situated on the right of way and adjacent thereto as were necessary in the construction, operation, and maintenance of the railway tracks and roadbed. Beyond this, the railway company acquired no interest in the minerals on or underneath the right of way, nor the right to mine or remove them, nor may it use the premises for any purpose other than purely railway purposes. And if in the pursuit of those purposes it unlawfully takes, injures, or destroys the property of the asphalt company, the latter has its remedy in damages. Oil Co. v. Oil Co., 106 Tex. 94, 157 S. W. 737, 51 L. R. A. (N. S.) 268; Lyon v. McDonald, 78 Tex. 71, 14 S. W. 261, 9 L. R. A. 295; Muhle v. Ry., 86 Tex. 459, 25 S. W. 607; Davidson v. Ry., supra.

If upon a fair hearing it is shown that the railway company has not acquired its right of way in any manner provided by law, then, of course, different questions from those here discussed would be presented. As the record stands, however, we hold that when the asphalt company's petition is measured by appropriate rules of construction, it does not present a case entitling the company to an injunction, without first giving the railway company an opportunity to be heard. For that reason the order granting the injunction is reversed, and judgment will be here rendered that such order be not granted.

Reversed and rendered.