## SHELTON v. LOCK. (No. 3250.)

Court of Civil Appeals of Texas. Amarillo.
June 12, 1929.

Rehearing Denied July 10, 1929.

Dan B. Hoover and E. J. Cussen, both of Canadian, for appellant.

Will Crow, of Canadian, for appellee.

HALL, C. J. On April 19, 1926, W. G. Clark and wife executed and delivered to one Myatt their promissory note, due 12 months after date, in the sum of $700, which provided for interest at the rate of 7 per cent. per annum. There was an indorsement upon said note to the effect that the note represented a loan of money from Myatt to the Clarks to be used in purchasing a certain town lot in the town of Canadian. This note was assigned to the appellee Lock, who alleges that he was the owner and holder thereof on the 1st day of July, 1927. In November, 1928, he sued Shelton and Clark, setting up the foregoing facts, and further alleges that he acquired said note for value, in due course, from Myatt during the month of November, 1926. That on or about the 25th day of July, 1927, he sold the note conditionally to the appellant Shelton, the consideration being the principal and accrued interest aggregating $762.05. He further alleges: That at the maturity of the note, Clark was unable to pay it. That during the month of June, 1927, Shelton had been trying to purchase the lot mentioned in the indorsement upon said note from Clark, but they had not agreed upon a price. That they continued to negotiate with reference to the sale and purchase of the lot, and on or about the 15th day of July, 1927, the defendant Shelton approached plaintiff and told him that he was on a deal to purchase the lot from Clark, and that, if plaintiff would indorse the note to him (Shelton) he could use it to trade in on the purchase of said property from Clark, and further represented to plaintiff that, if he succeeded in consummating the deal with Clark, he would at that time pay plaintiff the amount of the principal and interest due on the note; that, if he should fail to purchase said lot from Clark, then and in that event he would return the note to plaintiff or pay plaintiff the sum of $762.05, for said note. Plaintiff alleges that these false representations and promises were made to him by Shelton in order to secure the possession of the note, and, but for such false promises and representations, plaintiff would not have assigned the note to the said Shelton. He further alleges that Shelton did use the note in purchasing the said property from Clark, and that on or about the 16th day of December, 1927, Clark and wife conveyed the lot to Shelton by warranty deed, reciting as part of the consideration, the receipt from Shelton of $773.50, being the amount of said note and interest to that date. Plaintiff further alleges the failure of Shelton to pay him the amount of said note as agreed and prays for damages.

The court sustained a general demurrer to the plaintiff's petition in so far as he sought to recover against Clark.

Shelton answered by general demurrer, numerous special exceptions, a general denial, and alleged by way of cross-action that he had loaned Lock several sums of money, aggregating the sum of $665, and that the note was transferred to him by plaintiff in settlement of said indebtedness.

The case was submitted to a jury upon one special issue, in response to which the jury found that Lock delivered the note in question to Shelton to be used by Shelton as part of the consideration in the purchase of the town lot from Clark, with the understanding and agreement that, if Shelton used said note for said purpose, he would pay Lock the amount of money the note called for. In accordance with the verdict, judgment was entered for Lock for the full amount of the note and interest.

The first proposition urged is that the court erred in overruling the defendant's general demurrer to the plaintiff's petition.

In the petition, plaintiff set out some of his evidence and alleges numerous facts which are immaterial and constitute surplusage. Stripped of these matters, we think the petition is good as against a general demurrer.

In addition to the necessary allegations to constitute a cause of action, plaintiff alleged the circumstances under which he conveyed

the note to Shelton, in substantially the following language: That he was hard pressed for money during the months of June and July, 1927, and was making every effort possible to collect the Clark note and doing all in his power to help Clark sell the property so that he might be able to collect his note and that, on or about the 15th day of July, the defendant Shelton approached plaintiff and told him that he (Shelton) was on a deal to purchase said lot from Clark, and, if plaintiff would indorse the note over to him (Shelton) he would use it to trade in on said property with Clark and would be in a better position to make a purchase of said property from Clark by having said note in his possession and representing to Clark that he owned said note and could make delivery of said note as part of the purchase price for the property; that Shelton then, knowing that Clark was trying to sell the property to pay plaintiff the amount of said note, further represented to plaintiff: "That he would be able to scare and by high-pressure methods force said Clark to sell said property to him, Shelton, at his own price in that said Clark was an employee of the P. & S. F. Ry. Co., at Canadian, Texas, and that he would cause said Clark to lose his job with the said named railroad company if he, the said Clark, didn't pay the said note and that he, the said Shelton, was a man of ability in the art of trading and driving hard deals and was a collector and high-pressure man of an unknown quantity. That he, the said Shelton, wanted said property and would be sure to make a deal for said property if he only had possession of said note and would thereby be in position to claim ownership of said note, in his negotiations with the said Clark for the purchase of said property and further represented to the plaintiff that he would take said note and show the said Clark that same carried with it a lien on said property and would sue said Clark and foreclose said lien on said property if the said Clark did not sell said property to him at his, Shelton's own price and that by reason of said indorsement on the same, as heretofore alleged, that said note was given for a loan from Jimmie Myatt to purchase said property from said Ed Humphrey by said Clark and that he, Shelton, would make all these representations to said Clark and that in a short time he would have a deed to said property and would then, at that time, pay the plaintiff the amount of the principal and interest due on said note, that is; just as soon as said Shelton could be able to procure a deed to said property from the said Clark and wife and that he, the said Shelton, if he failed to make the purchase of said property as herein alleged, then and in that event would return said note to plaintiff or would pay this plaintiff the agreed price for same as herein alleged."

The appellant contends that these allega-

tions show a fraudulent conspiracy entered into between plaintiff and defendant for the purpose of procuring from Clark the lot at a grossly inadequate price by false representations as to the ownership of the note, that the note was a lien on the property; and further showing a conspiracy to procure the same by threat to cause Clark to lose his job with the railroad company if he did not sell to Shelton at the latter's price.

In this connection, it is further contended that these allegations show a conspiracy to violate the Penal Code 1925, art. 1409, and that such an agreement is contrary to public policy and constitutes an illegal contract, and, because plaintiff and defendant are in pari delicto, plaintiff was not entitled to recover.

We think the court correctly overruled the general demurrer.

■ The petition alleged all the material facts necessary to constitute a cause of action, aside from the allegations of fraud and the declared purpose of Shelton in wanting to purchase the note. These latter allegations are mere surplusage and did not render the pleading subject to a general demurrer, nor would the action of the court in overruling the special exceptions to such allegations constitute reversible error. Canadian Long Distance Telephone Co. v. Seiber (Tex. Civ. App.) 159 S. W. 897; Tandy v. Fowler (Tex. Civ. App.) 150 S. W. 481; Soto v. State (Tex. Civ. App.) 171 S. W. 279; Croft v. Rains, 10 Tex. 520.

Appellee had the right to sell his note to Shelton absolutely or upon the terms stated. It was past due and unpaid, and the conditional sale was in no degree prejudicial to Clark. In fact, his failure to pay at maturity was the moving cause of the sale. It is not alleged that Lock suggested to Shelton the use of "high pressure" methods in enforcing collection of the note, or that he took any part in the transaction between Shelton and Clark, which resulted in the acquisition of the lot by Shelton. Even if it be admitted that Shelton intended to sue "high pressure" methods to enforce collection, such conduct is not chargeable to Lock.

■ Clark was in default, and by paying the note could have avoided Shelton's threatened suit. As the holder of the note, Shelton had the right to sue upon Clark's failure or refusal to perform his obligation. 1 C. J. 965. A threat to do what one has the legal right to do is not, as a general rule, duress and will not support an action for damages. The surplus allegations do not show that Lock intended to obtain Clark's town lot by the use of any unlawful means. His purpose was to dispose of the note and secure his money, and, even if he knew that Shelton intended to use harsh methods in his efforts to procure the lot for himself, this would not amount to a conspiracy. 12 C. J. 544. Clark

was not forced to sell to Shelton, and he could have avoided selling by discharging his obligation to pay. The allegations do not show that Lock intended to interfere with Clark's employment by the railroad company or that he urged Shelton to do so, or even suggested such a course to Shelton; nor is it alleged that the latter ever caused Clark to lose his job, or that he procured the lot at less than its reasonable value. 12 C. J. 581. The gist of an action for conspiracy is the damages and not the conspiracy itself. It is not alleged that either Lock or Shelton communicated any threats to Clark to do any illegal act injurious to the latter's character, person, or property with the intent to appropriate the lot for their own use, so Pen. Code 1925 art. 1409 has no application.

When carefully analyzed, the surplus allegations really show no contract between Lock and Shelton to do any of the things therein stated. They merely set out the declarations of Shelton as to what he intended to do after he obtained the note. Allegations which are mere surplusage need not be proven; the rule being that the plaintiff need not prove more than is necessary to his recovery, even though more be alleged. Morrison v. Sewell (Tex. Civ. App.) 4 S.W.(2d) 1029; Ellerd v. Murray (Tex. Civ. App.) 247 S. W. 631; Collins v. Chipman, 41 Tex. Civ. App. 563, 95 S. W. 666. Even if an illegal contract had been shown by the pleading, still if Lock could, by his evidence, prove the case entitling him to recover without resort to proof of the illegal element, he would be entitled to a judgment, especially where the contract has been executed. Hall v. Edwards (Tex. Com. App.) 222 S. W. 167.

Reference to the statement of facts shows that Clark testified that Shelton never at any time resorted to unfair or "high pressure" methods, nor threatened to try to cause him to lose his job; and further testified that Shelton did not say or do anything to force him to sell the lot at a low price.

Therefore, the case has been property disposed of, and the judgment is affirmed.