**KAMPMANN et al. v. STAPPENBECK et al.**
**No. 8868.**

Court of Civil Appeals of Texas. San Antonio.
Jan. 14, 1932.

Rehearing Denied Feb. 3, 1932.

Church & Graves and Meritt Steger, all of San Antonio, for appellants.

D. A. McAskill, Grover C. Morris, and Arthur V. Wright, all of San Antonio, for appellees.

FLY, C. J.

This is an appeal from a judgment denying a temporary injunction to restrain appellees R. W. Stappenbeck, E. H. Talbert, Grover C. Morris, Arthur Wright, D. F. Davis, and J. F. Hair from holding or participating in any court of inquiry into the affairs of the City Central Bank & Trust Company, or the conduct of those who had been in charge of any one connected with said bank, which has been taken charge of by the banking commissioner of the state of Texas.

Appellants claim to be depositors in the defunct bank, and that they desired to restrain appellees from harassing the bank commissioner Shaw, witnesses, and attorneys, and from questioning certain witnesses. It is alleged:

"That in the event the names of the creditors and depositors are given to this unauthorized court of inquiry, it will have the purpose and effect of injuring these plaintiffs, as well as all other depositors and creditors of said bank, similarly situated, for which they will suffer irreparable injury for which they will have no adequate and legal remedy at law, in that if the names of said creditors and depositors are given that uncountable suits in the nature of garnishments will be filed against the liquidating bank by creditors of said depositors in an attempt to tie up funds which the depositors may owe to creditors in this and other communities; that such actions in the nature of garnishment suits will tend to tie up the liquidation of this bank and will cause delay to these plaintiffs as well as all other depositors of said bank in realizing any sums from said liquidating bank, as the liquidating bank will not be permitted, and in fact will be compelled not to pay out or to distribute any liquidating dividend until all court proceedings are settled.

"That the defendants in calling persons who are working in said bank as witnesses are serving no useful purpose and are causing these plaintiffs, as well as all other persons who are depositors of said bank to be paying an excessive rate and charge for the liquidation of said bank, in that it will take a great deal longer time to liquidate the bank and necessarily incur greater expense in the liquidation of said bank and that funds of the liquidating bank will be used for such expend-

itures, on which funds there is a preferred claim, before paying these plaintiffs, as well as all other depositors of said bank similarly situated, and these plaintiffs and the other sixteen thousand depositors will suffer irreparable injury and there will be no way for them to protect the excessive expense of said liquidation and they will have no adequate remedy at law.

"That these plaintiffs further say, in the interest of the community, that said alleged court of inquiry is causing and has caused a feeling of unrest and lack of confidence in all businesses in the City of San Antonio, Bexar County, Texas, as well as the adjoining communities, and that said alleged court of inquiry attempts and is attempting to discredit numerous persons of previous good standing in the community, without in any way showing that said persons have violated the law; that said proceedings are being conducted in such manner as to impair public confidence and militate against the interests of the depositors and creditors, and if continued will result in irreparable damage and injury to said depositors and creditors for which neither they nor these plaintiffs have any adequate remedy at law.

"That if the names of the depositors and creditors of said bank are brought before what might be termed a 'Court without authority,' it will cause the financial ruin of many individuals as well as corporations who had deposits in said bank, in that some of the creditors of said individuals or corporations would be inclined to feel insecure in its or their claims against said individuals or corporations, and would immediately commence harassing said individuals or corporations and instituting suits against said individuals and corporations having deposits with said insolvent bank, which would cause said depositors irreparable injury, for which they would have no legal adequate remedy at law, and such action on the part of the defendants is unwarranted, uncalled for, and unlawful and in direct violation of the conscience of good citizenship, as well as in violation of the Constitution and the laws of this State."

■■ The petition is vague and indefinite, consisting of surmises, predictions, and dire prophesies, as to the terrible ruin and destruction of values that would be caused by any inquiry into, and an investigation of, the acts of directors and other officers of the City Central Bank & Trust Company. The allegations are utterly inadequate to show any wrong or injury that would be inflicted upon the appellants. The wrongs alleged are connected with the banking commissioner, who is administering the affairs of the bank, and who, if he is being harassed and prevented from exercising the duties of his office, is the proper one to complain thereat. Presumably, if he has been so fearfully hindered and obstructed in the performance of his official duties, he is more capable of asserting his rights than two or more depositors in the bank are; and they have no right or authority to assume the guardianship of this state officer, nor to assume the protection of the hundreds of other depositors in the bank. Appellants have assumed powers and duties not conferred on them by law or in a court of equity.

■ The bill for equitable relief cannot be based upon broad conclusions or indefinite assertions as to sustaining irreparable injury and as to having no adequate remedy at law, but facts showing these matters must be clearly and fully pleaded so that the chancellor and not the pleader can draw the conclusions. Not only should affirmative facts be pleaded, but the bill should negative all probable matters that might prevent relief. Lark v. Coyle (Tex. Civ. App.) 260 S. W. 1107; Asphalt Railway Co. v. Asphalt Co. (Tex. Civ. App.) 256 S. W. 675; Cattle Co. v. Board, 80 Tex. 489, 16 S. W. 312. No presumption can be indulged in regard to the allegations, but their sufficiency must be judged in the light of the allegations rigorously construed. Ross v. Veltmann (Tex. Civ. App.) 161 S. W. 1073, Holbein v. De La Garza, 59 Tex. Civ. App. 125, 126 S. W. 42.

Appellants' plea, even if it had appeared that the costs of the court of inquiry would be paid out of taxes and a few mills be thereby extracted from appellants, is of no effect, but is merely fanciful and imaginary, as the law makes no provision for paying costs in such inquiries, and it cannot be presumed that those intrusted with the taxes will voluntarily and gratuitously pay such costs out of the taxes. The imaginary decrease in values of the assets of the bank, by an inquiry into the past actions of officers and directors is too fanciful and theoretical to form the basis for an equitable writ.

■ The inquiry prosecuted by appellees is undoubtedly a proceeding under a criminal law, and the rule is well established that an injunction will not be issued to enjoin such procedure. As said by Mr. Pomeroy in Equity Jurisprudence (2d Ed.) § 2065: "In general, a court of equity has no jurisdiction to enjoin criminal proceedings. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, * * * is to invade the domain of the courts of common law, or of the executive and administrative departments of the government.' "

The allegations disclose that the injunction is sought to protect some one other than appellants from prosecution and possible injury, and in their prayer they seek to prevent an inquiry into the affairs of the bank by the county attorney or his assistants in any court, although they vigorously attack the anomalous judicial procedure of two rural

justices of the peace, sometimes combining their judicial powers and authority in a twin court organized by them. Probably a court consisting of two justices of the peace is unparalleled in judicial history; still this does not aid appellants in obtaining relief from imaginary ills. This court is not called upon to justify the court of inquiry which for so long a time appeared on a stage erected for its drama, if not farce; but however grossly grotesque and ridiculous the proceeding may appear appellants have shown no right to extinguish the lights and lower the curtain on the performance.

The judgment is affirmed.