BOUCHER et al. v. WISSMAN.
No. 13862.

Court of Civil Appeals of Texas. Dallas.
Oct. 10, 1947.

Rehearing Denied Nov. 21, 1947.

J. Willard Gragg, of Dallas, and B. Ray Smith, of Paris, for appellants.

Henry Klepak, of Dallas, for appellee.

BOND, Chief Justice.

This is an appeal from an order, after hearing, granting appellee Nat Wissman a temporary injunction against appellants Harry Boucher and Harvey Phillips, d/b/a Southwest Tool & Die Company, their servants, agents and employees, from "making, manufacturing, selling, directly or indirectly," a fishing pole, identified in the record as one of which the assemblage and creative idea is alleged to belong to the appellee, until further orders of the court. The parties will be designated as in the court below.

Plaintiff's petition, upon which the injunction was issued, relates that on or

about October 12, 1946, after experimenting through various stages of perfecting a new type of fishing pole, plaintiff finally made and perfected one "which is novel in its conception and utility, so that it can be used as a fly rod, casting rod or fishing pole, and, when dissembled, serves as a container, and, with rubber tips placed on each end converts the assemblage into a walking stick;" that during the stages of perfecting the fishing pole, plaintiff called upon various persons, firms and corporations who were engaged in the business of manufacturing samples and producing in lots metal products, among whom are named "Precision Screw Products Company, Grand Saline, Texas; Dallas Screw Products Company, 3014 Commerce Street, Dallas, Texas; and Burns Tool & Die Company, 2018 West Clarendon Street, Dallas, Texas;" and that plaintiff had them to make and manufacture the fishing pole; that after perfecting said pole, plaintiff engaged the defendants, doing business as the Southwest Tool & Die Company, to make samples of the pole with certain designated improvements thereon; and that the defendants in course of time made thirty-one samples of the pole, but, being unable to properly construct them to plaintiff's satisfaction, they were advised by plaintiff their services were no longer needed.

Plaintiff's petition further relates that after advising defendants that their services were no longer needed in the manufacture of the fishing pole, he employed the firm of Smallwood & Son Machine Company to make and manufacture, in accordance with the sample, the fishing pole in production lots; in consequence, "many sales were made of said fishing rod throughout the various parts of the United States;" and as a result of such successful manufacture and sale of this item, plaintiff alleged that he "believes and has reason to believe" that the defendants and each of them are now attempting to and will engage in the manufacture and sale of fishing rods of the same likeness of that shown to them in contravention of "plaintiff's prior rights" as the originator of said fishing pole assemblage, and an infringement upon "patent rights now had or to be acquired."

█ It will be seen that plaintiff's suit involves no patent rights; and the evidence shows that he had no patent to legally protect his inventive assemblage idea of the fishing pole; nor is there any allegation upon which to base any prior secret property right, or "trade secret." An inventor of a novel, useful device or article has two courses open to him to protect his property rights: He, himself, may keep secret the principle or method by which his article is produced or manufactured; or he may obtain a patent from the Federal patent authorities on his invention. Plaintiff not having patent rights, his control of his product depended entirely upon keeping it secret. There is no pleading that defendants agreed to keep secret any knowledge they acquired of the alleged fishing pole, or that they agreed not to manufacture or sell the product; nor are there any facts found in the record which may reasonably be interpreted as referring to such matters. Plaintiff's claim that the invention is protected as a trade secret is incompatible with his claim that it is protected under patent laws, since protection to a trade secret is afforded only if there has been no public disclosure; whereas a patented invention must have been clearly described in an application for the patent.

█ To constitute a new process or inventive idea of assemblage of parts to create a novel, useful product, subject to protection by injunction, there must be employed creative faculty in originating it, amounting to a meritorious discovery or inventive idea. A mere mechanical difference in the use of a product is not a new process or discovery. The assemblage of the various parts composing the fishing pole, which the defendants were enjoined to manufacture and sell as an infringement upon plaintiff's legal and equitable rights, is susceptible to be copied and manufactured by any one possessing mechanical ability of the most simple nature. A process or formula of assemblage known generally, and commonly known to the trade, is not a trade secret and will not be

protected by injunction. Matters which are completely disclosed by the inventor and by the articles themselves, as here, are not secrets after the articles have been put on the market to be reviewed by all people.

In the case of Brown & Root, Inc. v. Jaques, Tex.Civ.App., 98 S.W.2d 257, 258, injunction was held not to lie to restrain the defendant from manufacturing and using unpatented apparatus for sawing timber. The inventor assembled a portable, horizontal circular saw, operated by a tractor, which he claimed to be particularly adaptable to defendant's work. After some negotiations with the defendant in the suit, he took one of his saws to a timber area for demonstration and for the specific purpose of furnishing a number of the saws, if proved acceptable, to the defendant. A disagreement arose as to the price, resulting in the defendant refusing to purchase the new and novel wood saw, and in the defendant constructing a similar saw. The Austin Court of Civil Appeals (no writ applied for) held:

"The inventor of a useful device or article obviously has two courses open to him. He may, at his own risk, himself keep secret the principle or method by which his article is produced or manufactured, and sell his products to the public; or he may obtain a patent on his invention. In the first instance his control of his product depends upon keeping it a trade secret. In the latter, though made public, his rights are protected under the patent laws, and are referable to such laws. Up to the time Jaques was granted a patent, his right to protection of his invention was a trade secret. As such he was undoubtedly entitled to protection by injunction against its use by any one who had obtained such secret by fraud or breach of a confidential relation. 14 R.C.L. 403; 32 C.J. 157. If, however, the manufactured article itself, when sold to the public, reveals or discloses the principle or combination of parts by which such article or machine is created or manufactured, the sale thereof to the public, or the placing of same in the hands of the public, in and of itself discloses and makes public the secret by which it is created or manufactured. In which event the sale of the article reveals the trade secret by which it is made. This was manifestly true of the saw in question. It was not such a device as would conceal the secret of its construction. On the contrary, when exposed to the public, it readily revealed the arrangement or combination of well-known mechanical parts by which it was constructed and operated."

On broad equitable principles and in consideration of public policy, relief by injunction should not be granted unless the plan or process is a trade secret. The facts here presented show conclusively that the plaintiff was not entitled to protection of any trade secret, secret process of manufacture, or secret formula in the construction and use of the fishing pole in suit; or that the defendants betrayed any confidential business secret by manufacturing a pole similar to that manufactured by plaintiff.

The undisputed facts in this case show that plaintiff, in October 1946, exhibited his alleged novel fishing pole to a Mr. Hildebrand, who was in nowise his employee or had any contractual relation with him; then in November 1946, a Mr. Lacy, a public accountant, was shown the pole by plaintiff; then in October and November 1946, a Mr. Hopson saw plaintiff's fishing pole at his (plaintiff's) place of business; then in January 1947, a Mr. Selman, a paint contractor working at plaintiff's place of business, saw the fishing pole, and about a month prior to the time the injunction was issued herein, Mr. Selman purchased five of the poles; then, in the early part of 1947, Precision Tool & Die Company made samples of plaintiff's fishing pole, and at the same time a Mr. Burns was working on the fishing pole, having been engaged by the Precision Tool & Die Company; and then, about the same time, a Mr. McClellan made photographs of the fishing poles for the inventor to advertise his alleged novel design. Then, during January and February 1947, the fishing pole was displayed and shown to a Mr. Cuthberson who was under no contractual relationship with plaintiff nor in his employment; and, about February 11, 1947, plaintiff showed the fishing pole to

one Mr. Norris and also to a Mr. Vilbig; then Mr. Riordan testified that he had seen the fishing pole prior to April 16, 1947, at plaintiff's place of business. In neither of the above instances where the fishing pole involved in this suit was exhibited and displayed, is there any evidence or claim that any of them were pledged to the secrecy of their information as to the assemblage of the pole. Furthermore, the plaintiff, himself, testified that he had two different photographs made of the fishing pole during January and February 1947, and that such photographs were made for advertising purposes. And, further, plaintiff testified that he had sold more than seven thousand of said fishing poles to the public and had been selling them publicly for about five or six weeks prior to the trial. A Mr. Ballard testified that he was engaged by plaintiff in selling said fishing poles through his distributors over the states of the Union, and that a copy of advertising matter, fully and completely describing the pole, was published in "Field and Stream"—a magazine of general distribution to more than one thousand purchasers of the magazine.

Under such disclosures of pleadings and facts, it is inconceivable that said fishing pole constituted a secret in any matter whatsoever at the time plaintiff first contacted defendants during the month of March 1947; or that such fishing pole was a trade secret on June 13, 1947, at the time of trial of this suit in the district court, and the injunction granted.

Plaintiff's application for injunction is wholly inadequate to support the order procured thereon; and the controverted evidence and admissions of the plaintiff on trial, do not under the law suffice as predicate for the very harsh injunctive remedy. In determining the adequacy of the allegations and proof, no presumption can be indulged. The complaint, upon which an injunction is granted, shall set forth in specific terms, and not inferences, the reasons for such remedies; and where, as here, the petition and the proof show conclusively that the applicant was not entitled to the order, it was an abuse of discretion as a matter of

law on the part of the trial court to make the order. 24 T.J. p. 224, sec. 169; Lark et al. v. Coyle et al., Tex.Civ.App., 260 S.W. 1107; Kampman et al. v. Stappenbeck et al., Tex.Civ.App., 45 S.W.2d 761; Holbein et al. v. De La Garza et al., 59 Tex.Civ. App. 125, 126 S.W. 42.

For the reasons stated, the judgment appealed from is reversed, and the temporary injunction is immediately dissolved.