Glenn HART, an Individual, Joyce Hart, an Individual, Rusty Acres, Inc., a Texas Corporation, and Ceres Corporation, a Texas Corporation, Appellants,

v.

Gavin MOORE, an Individual, Appellee.

No. 07–96–0014–CV.

Court of Appeals of Texas, Amarillo.

Aug. 5, 1997.

Rehearing Overruled Oct. 2, 1997.

Van W. Northern, Northern Law Firm, Amarillo, for appellant.

Philip R. Russ, Law Offices of Philip R. Russ, Amarillo, for appellee.

Before BOYD, C.J., and DODSON and REAVIS, JJ.

BOYD, Chief Justice.

In 17 points, appellants Glenn Hart, Joyce Hart, Ceres Corporation, and Rusty Acres, Inc. contend the judgment in favor of appellee Gavin Moore must be reversed. For reasons we later discuss, we reform the judgment and as reformed, affirm it.

This suit arose out of five 1994 farming contracts between appellee, as lessee, and appellants as lessors. In October 1994, appellee sued appellants claiming they had misrepresented the available water flow on the lands covered by the contracts and, because of that insufficient water flow, appellee was unable to properly utilize the land to harvest wheat and corn crops.

Appellee also alleged that appellants had wrongfully ejected him from the premises which prevented him from salvaging what crops did exist, and in addition, he alleged appellants converted his interest by harvesting and storing those remaining crops. Appellants filed a counterclaim in which they

argued appellee, by failing to properly farm the premises, had breached the lease agreement, thereby entitling them to retake possession of the property.

In their first, second, third and ninth points of error, appellants assert that the trial court erred in various ways by submitting "Special Question" 22 to the jury. That question, and the jury's answer, is as follows:

> Do you find from a preponderance of the evidence that any of the following corporations are the alter ego of Glenn Hart, Joyce Hart, Joel Hart or Jeff Hart?
>
> Answer "Yes" or "No" as to each corporation named.
>
> | Rusty Acres, Inc. | Answer: Yes. |
> |---|---|
> | Ceres Corporation | Answer: Yes. |
> | Kettle Corporation | Answer: Yes. |
> | Hart & Son | Answer: Yes. |

In their first point, appellants argue that the trial court erred in "entering a judgment against Defendants as 'alter egos' of parties who were never served with process, and over which the court had no jurisdiction." Specifically, their point is addressed to a portion of the judgment which reads as follows:

> The Court further finds there is sufficient evidence to support the finding of the jury that in response to Special Question No. 22, the Jury found that RUSTY ACRES, INC., CERES CORPORATION, KETTLE CORPORATION and HART & SON, and each of them, are the alter ego of GLENN HART, JOYCE HART, JOEL HART, and JEFF HART; it is,
>
> FURTHER ORDERED that the corporations RUSTY ACRES, INC., CERES CORPORATION, KETTLE CORPORATION and HART & SON, and each of them, are the alter ego of GLENN HART, JOYCE HART, JOEL HART, and JEFF HART;

Even though the judgment contained these recitals, the decretal portion of the judgment made no reference to Joel Hart, Jeff Hart, Kettle Corporation, and Hart & Son. Thus, even though there is no assessment of monetary or injunctive relief against any of these two individuals and two entities, the recitations are declaratory in nature,[1] and concern persons and entities over which it had absolutely no jurisdiction. In considering these recitals, it is axiomatic that this court is obliged to determine, even if *sua sponte,* our jurisdiction to hear an appeal. *New York Underwriters Insurance Co. v. Sanchez,* 799 S.W.2d 677, 678 (Tex.1990); *Welch v. McDougal,* 876 S.W.2d 218 (Tex.App.—Amarillo 1994, writ denied).

In order for a court to exercise power over cases or controversies, it must have subject matter and territorial jurisdiction. Subject matter jurisdiction concerns the competency of the court to hear and determine a particular category of cases, while territorial jurisdiction concerns a court's authority to exercise power over certain property or persons. A court has no jurisdiction or power over a person or entity that has not been served with process, despite the fact that the matter in question may be within the court's subject matter jurisdiction. *Olton State Bank v. Howell,* 105 S.W.2d 287, 288 (Tex.Civ.App.—Amarillo 1937, no writ); *Waldron v. Waldron,* 614 S.W.2d 648, 650 (Tex.Civ.App.-Amarillo 1981, no writ). It is uncontroverted in this case that Joel Hart, Jeff Hart, Kettle Corporation, and Hart & Son were not named as defendants in the suit, they were not served with process, and they did not participate during deliberations in the trial court. That being so, the trial court had no jurisdiction to enter even a declaratory finding as to their status *vis a vis* appellants and its attempt to do so was void. In considering the effect of those void recitals upon the judgment, we note as long as the remaining portion of a judgment is not so dependent upon the void recitations as to be inseparable, an appellate court may sever that portion of the judgment and dis-

---

1. In oral argument, appellants acknowledged that the "alter ego" recitals were declaratory in nature and did not otherwise adversely affect Joel Hart, Jeff Hart, Kettle Corporation, or Hart & Son.

pose of it. Thus, appellants' first point must be, and is, sustained to the extent that the trial court erred in making the declaratory findings as to the non-parties.

The gist of appellants' second point challenge is the trial court erred in submitting Question 22 over their "objections regarding surprise and special exceptions, since it contained parties never named or served, contained an instruction which violates Texas statutes and laws, and was reasonably calculated to cause, and probably did cause rendition of an improper judgment." In their third point, appellants contend the court erred in submitting the question because the court included four persons/entities "never named or served, and fails to distinguish which Defendant is being named as an 'alter ego' of which party." In their ninth point, they contend the trial court erred in submitting the alter ego question, and in "overruling Defendants' Motion for New Trial, and entering verdict thereon, since there was no evidence, or factually insufficient evidence, to support a verdict thereon." In response to those challenges, appellee argues appellants failed to properly preserve them for our review.

The record reveals that appellants objected to proposed Special Question 21 [2] at a pretrial hearing. That question read:

Do you find from a preponderance of the evidence that any of the following corporations are the alter ego of Glenn Hart, Joyce Hart, Joel Hart or Jeff Hart?

Answer "Yes" or "No" as to each corporation named.

Rusty Acres, Inc.

Ceres Corporation

Kettle Corporation

Hart & Son

Hart Start

■ However, after the close of testimony, at the pre-submission jury charge conference, the trial judge amended the proposed Question 21 by deleting Hart Start from the answer sequence and by reassigning it as Question 22. Appellants made no objection

to this amendment and modification. It is the rule that when a jury question to which a party has objected is amended by the court, a new objection must be asserted in order to preserve the issue for appellate review. *Texas Co. v. Ivey*, 137 Tex. 100, 152 S.W.2d 738, 740 (1941). Where the record shows no objection to the charge nor the request of appropriate instructions and questions, any error in the form or substance of the charge as given is waived. *Biggs v. First National Bank of Lubbock*, 808 S.W.2d 232, 237 (Tex. App.—El Paso 1991, writ denied); *Hargrove v. Texas Employers' Insurance Association*, 332 S.W.2d 121 (Tex.Civ.App.—Amarillo 1959, no writ); Tex.R. Civ. P. 274.

Also, in considering appellants' ninth point challenge to the legal and factual sufficiency of the evidence to sustain the jury's answer to Question 22, it is established that to raise a factual insufficiency challenge on appeal, a point to that effect must be made in a motion for new trial. *In the Matter of C.F. v. State*, 897 S.W.2d 464, 473 (Tex.App.—El Paso 1995, no writ); Tex.R. Civ. P. 324(b)(2). No such point was made.

■ To preserve a legal insufficiency challenge for appellate review, an appellant must have taken one or more of the following procedural steps in the trial court: 1) a motion for instructed verdict; 2) a motion for judgment notwithstanding the verdict; 3) an objection to the submission of the issue to the jury; 4) a motion to disregard the jury's answer to a vital fact issue; or 5) a motion for new trial. *Steves Sash & Door Co. v. Ceco Corp.*, 751 S.W.2d 473, 477 (Tex.1988); *Salinas v. Fort Worth Cab & Baggage Co., Inc.*, 725 S.W.2d 701, 704 (Tex.1987); *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 823 (Tex.1985). Thus, even though Tex.R. Civ. P. 324b does not expressly require the filing of a motion for new trial to complain of legal insufficiency in a jury trial, by its decisions, our supreme court has imposed just such a requirement if the error has not otherwise been preserved. *Parallax Corp., N.V. v. City of El Paso*, 910 S.W.2d 86,

---

**2.** Special Question 22 in the court's charge is the progeny of the Special Question 21 considered at the pre-trial conference.

90 (Tex.App.—El Paso 1995, writ denied). Appellants did not file a motion for instructed verdict, a motion for judgment notwithstanding the verdict or a motion for new trial. Thus, under this record, appellants have waived any right to complain of the form or substance of Question 22 as it applies to them, and they have not preserved any right to complain about the legal or factual sufficiency of the evidence to support the jury's answer to the issue. Appellants' second, third, and ninth points of error are overruled.

In their fourth point, appellants contend the trial court erred in "refusing Defendants' Motion To Strike Plaintiff's (appellee's) First Supplemental [sic] Petition and Motion For Continuance, since the amended Petition surprised Defendants and forced Defendants to trial without adequate notice of new claims, new remedies, and new parties" [3] mentioned in the petition. In that supplemental petition, appellee asserted causes of action for breach of the duty of good faith and fair dealing, conversion and ejectment, and conspiracy to defraud. They also sought to recover monetary damages for economic loss, mental anguish, distress, and worry. In their fifth point, appellants argue the trial court abused its discretion in overruling their exceptions to the supplemental petition because it was vague, indefinite, and ambiguous, failed to give them fair notice of appellee's claims, omitted elements of those claims and "failed to specify damages."

The trial of this cause was originally set for April 3, 1995, but was rescheduled by the court for August 21, 1995. A notice of trial and pre-trial motions was mailed by the court on April 20, 1995, which provided that "all pre-trial motions" and "proposed special issues" were to be presented on "the Friday before" the pre-trial date of July 26, 1995. Without specific leave of court, the first supplemental petition was filed with the court on August 10, 1995, and a copy served on appellants' counsel on August 14, 1995. Upon receipt of their copy, appellants' counsel unsuccessfully filed special exceptions, a motion to strike, and a motion in limine.

In discussing this argument, we first note that Rule 63 of the Rules of Civil Procedure permits the filing of amendments, responses, and other pleadings of like ilk with the clerk at any time the filing of such instruments does not operate as a surprise to the opposing party, "provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party."

In responding to appellants' contention, appellee initially argues his supplemental petition was timely filed because it was filed on August 10, 1996, which was more than seven days prior to the August 21, 1996 commencement of trial which he considers as "date of trial" within the purview of the rule. However, that argument overlooks the undisputed fact that the supplemental pleading was filed well after the date the trial court had specified as the cut-off date for filing pleadings. That being so, appellee needed leave of the trial court to file his supplemental petition, even if it was considered filed more than seven days before the day of trial. *Texas Commerce Bank v. Lebco Constructors*, 865 S.W.2d 68, 79 (Tex.App.—Corpus Christi 1993, writ denied).

Even so, in instances in which leave of the trial court is required, that court still has no discretion to refuse such an amendment or supplemental pleading unless: 1) the opposing party presents evidence of surprise or prejudice; or 2) the amendment asserts a new cause of action or defense and thus is prejudicial on its face and the opposing party objects to the amendment or supplemental pleading. *Greenhalgh v. Service Lloyds Insurance Co.*, 787 S.W.2d 938, 939 (Tex.1990); *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex.1980); *Texas Commerce Bank*, 865 S.W.2d at 79. In *Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.*, 844 S.W.2d 664 (Tex.1992), our supreme court has indicated

---

**3.** William J. (Jeff) Hart, Joel Hart, and the Kettle Corporation were names in the supplemental petition as alter egos of appellants and had never been named before.

that in reviewing a trial court's determination of Rule 63 motions to amend, it will analyze them based on whether the proposed amendment or supplemental pleading is more in the nature of a procedural change, under which the party resisting the amendment maintains the burden to show evidence of surprise or prejudice, or a substantive change which would alter the nature of the trial itself and which the trial judge retains discretion to deny. *See also Texas Commerce Bank,* 865 S.W.2d at 79.

Although appellee made no specific motion for leave to file the supplemental petition, and the record does not show any specific order granting leave to file, by overruling the special exceptions to the pleading, and the motions to strike, for a continuance, and in limine, the trial court, inferentially, if not explicitly, granted leave to file the supplemental petition. In reviewing the procedural history giving rise to this point, we note that in his original petition, filed on October 13, 1994, appellee asserted his causes of action for breach of contract and fraud, and the remedies of accounting and injunction. In his supplemental petition, he asserted claims for breach of good faith and fair dealing, ejectment, conversion, and conspiracy to defraud and sought monetary damages for economic loss, mental anguish, distress, and worry. His cause of action seeking recovery for breach of good faith and fair dealing was based upon the interaction between appellee and appellants arising out of their contractual relationship. The cause of action for conspiracy to defraud was intimately related to the claim of fraud and the alleged concerted efforts of appellants to effectuate that fraud. The cause of action for conversion was based upon the original request for an accounting of the crops removed and stored at a private feed yard.

The cause of action for ejectment was closely and intimately related to the original pleading seeking recovery for appellants' interference with appellee's right to harvest crops. In sum, all of these additional counts were so closely related to the causes of action specified in the original pleadings that they did not amount to substantive changes in the lawsuit. Additionally, appellants failed to make a sufficient showing of surprise to show that the filing of the supplemental petition requires reversal.

Moreover, even assuming arguendo that some of the assertions might have amounted to substantive changes in the relief sought, the trial court's action in failing to strike those assertions is measured by an abuse of discretion standard. *Greenhalgh,* 787 S.W.2d at 939; *Hardin,* 597 S.W.2d at 349. The test used to determine if a lower court abused its discretion is whether the court acted without reference to any guiding rule or principle, or whether the court acted in a manner that was arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238 (Tex.1985). As we have previously stated, the relevant causes of action in appellee's first supplemental petition were inherently related to the original causes of action and did not substantially alter the posture of the case. That being so, their addition did not so alter the posture of the case as to unfairly prejudice appellants. Thus, under this record, the trial court did not act unfairly or arbitrarily in refusing to grant appellants' various motions and did not abuse its discretion in failing to do so. Appellants' fourth and fifth points of error are overruled.

In their sixth, seventh, tenth, eleventh, twelfth, thirteenth, fourteenth, and fifteenth points, appellants posit the trial court erred in submitting jury questions 1 through 4, 5, 6, 8, 23 and 25. In considering these points, it is well established that parties are barred from raising issues on appeal which were not properly preserved at trial. *Schwab v. Stewart,* 387 S.W.2d 939 (Tex.Civ. App.—Amarillo 1964, writ ref'd n.r.e.); Tex.R. Civ. P. 274. Objections to jury questions must be made prior to submission of the charge to the jury and must be sufficiently specific to afford the trial court an opportunity to correct errors. *Castleberry v. Branscum,* 721 S.W.2d 270, 276 (Tex.1986). Thus, objections to jury questions not made prior to submission are waived. *Vick v. George,* 696 S.W.2d 160, 162–63 (Tex.App.— San Antonio 1985, writ ref'd n.r.e.); Tex.R. Civ. P. 274.

■ At the charge conference, appellants' only objection was to part C of Question 1 which inquired if appellants were authorized to lease appellee Sections 373 and 374 in Sherman County. Their objection was that its submission was unnecessary because "it just seems to me that there is no dispute about that fact, as far as we're concerned...." Because appellants made no other timely objections to the charge and, because in this appeal, they do not limit their Question 25 challenge to subpart C, but rather attack the question *in toto*, appellants have not preserved these challenges for our review. Therefore, their points of error six, seven, ten, eleven, twelve, thirteen, fourteen and fifteen are overruled.

In their eighth point of error, appellants argue that the trial court erred in "entering a judgment on all of the alternative grounds of recovery alleged by Plaintiff, instead of entering a judgment on the theory that provided the largest recovery." In their answer to Question 4, without allocation individually, the jury found appellants liable for $9,391 damages for misrepresentations. In response to Question 8, the jury found each appellant individually liable for $3,418.50 damages for breach of contract. In response to Question 10, the jury found each appellant individually liable for $5,541.75 damages for conversion. In its judgment, the trial court held appellants jointly and severally liable for the $9,391 misrepresentation damages, $13,674 ($3,418.50 multiplied by 4) damages for breach of contract, and $22,167 ($5,541.75 multiplied by 4) damages for conversion.

■ Appellants initially argue each of these damage awards are for alternative causes of action actually arising from one injury, *i.e.*, lost profits from crops appellee should have been able to harvest. Because of this, they reason, the court should have followed the principle that where a party tries a case on alternative theories of recovery, and the jury returns favorable findings on the alternative theories, a plaintiff is only entitled to recover on the theory that permits the greatest recovery. *See Boyce Iron Works v. Southwestern Bell Telephone*, 747 S.W.2d 785, 787 (Tex.1988). In considering this argument, we note that appellee's action

for conversion arises from appellants' alleged action in preventing appellee from harvesting his crops, in harvesting a portion of appellee's corn, and then storing the corn at a privately owned feed yard. In contrast, the claims for misrepresentation and breach of contract arise from the entry into, and breach of, the contractual agreements between the parties. Thus, a recovery for conversion does not duplicate a recovery for misrepresentation and breach of contract, and that portion of appellants' eighth point is overruled.

■ We next consider appellants' argument that the award of damages for both misrepresentation and breach of contract resulted in an impermissible "double" recovery. The theories of recovery for misrepresentation include out-of-pocket expenses or loss of the benefit of the bargain. The recovery of out-of-pocket expenses compensates one for actual loss due to another's representation while a benefit-of-the-bargain recovery allows the recovery of what an individual might reasonably have expected to recover as the result of another's representation. In contract law, theories of recovery for a breach of contract include reliance or expectancy damages. Reliance damages, similar to out-of-pocket recovery, reimburse one for expenditures made towards the execution of the contract in order to restore the *status quo* before the contract. Expectancy damages, similar to benefit-of-the-bargain recoveries, award damages for the reasonably expected value of the contract. Thus, the theories of recovery for both tortious misrepresentation and breach of contract are similar and necessarily involve the same type of damages and an award of both such damages would indeed be a double recovery. Double recoveries for alternative measures of damages are not permitted. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 367 (Tex.1987). To that extent, appellants' eighth point is well taken.

■ It is the rule that in situations in which an impermissible double recovery has been awarded, and the prevailing party has failed to elect between the alternative recoveries, the court should utilize the findings affording the greater recovery and render

judgment accordingly. *Id.* In this instance, the jury awarded appellee damages of $9,391 for misrepresentation and an aggregate of $13,674 damages for breach of contract. Accordingly, appellee would be entitled to recover only the latter figure.

■ In their next eighth point challenge, appellants aver that the award of both exemplary damages and damages resulting from a conspiracy to defraud would also result in an impermissible double recovery. Damages are not presumed from the existence of a conspiracy because the gist of a civil conspiracy action is the damage resulting from commission of a wrong which injures another, not the conspiracy itself. *Schlumberger Well Surveying Corp. v. Nortex Oil and Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968); *Starling v. Hill,* 121 S.W.2d 648, 650 (Tex.Civ.App.—Waco 1938, no writ); *Shelton v. Lock,* 19 S.W.2d 124, 127 (Tex.Civ. App.—Amarillo 1929, writ dism'd). Thus, a civil conspiracy is not a cause of action complete within itself, but is, rather, a basis for imposing exemplary damages predicated upon the existence of actual damages. *Phillips v. Latham,* 523 S.W.2d 19, 26–28 (Tex. Civ.App.—Dallas 1975, writ ref'd n.r.e.) (holding that where no damages are found to exist, exemplary damages based upon a claim for conspiracy will not stand). *See International Bankers Life Insurance Co. v. Holloway,* 368 S.W.2d 567, 581–83 (Tex.1963). Additionally, if actual damages are proven, a showing of civil conspiracy imposes joint and several liability on all co-conspirators for any actual damages resulting from acts in furtherance of the conspiracy. *See Kirby v. Cruce,* 688 S.W.2d 161, 164 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *Massey v. Farnsworth,* 353 S.W.2d 262, 271 (Tex.Civ.App.— Houston [1st Dist.] ), *rev'd on other grounds,* 365 S.W.2d 1 (Tex.1963). All of that being so, it follows that a recovery for conspiracy to defraud is exemplary in nature.

■ In considering whether an allowance of damages for both civil conspiracy and exemplary damages would result in a double recovery, the rationale the court used in deciding *Birchfield v. Texarkana Memorial Hospital,* 747 S.W.2d 361 (Tex.1987) is helpful. In that case, the supreme court noted

that, although Texas Rule of Civil Procedure 301 allows recovery for all relief to which one is entitled, in the absence of separate and distinct findings of actual damages on different acts, a party is not entitled to recover both exemplary damages and the treble damages allowable under the Deceptive Trade Practices Act (DTPA) because both are punitive in nature and to allow both would amount to a double recovery. *Birchfield,* 747 S.W.2d at 367. By analogy, to allow both types of recovery in this case would be to allow a double recovery based upon the same acts. Appellants' eighth point is sustained to that extent. The court awarded appellee $9,000 for conspiracy to defraud and $15,000 exemplary damages. Appellee is not entitled to both recoveries and, in absence of any election between the two, is only entitled to the larger $15,000.

■ We must next consider the portion of appellants' eighth point in which they contend the trial court erred in holding them jointly and severally liable for damages which the jury assessed. In response to Special Question 23, the jury found the existence of a civil conspiracy to defraud involving Glenn Hart, Ceres Corporation, and Rusty Acres, Inc., but did not include Joyce Hart in those findings. Although the jury's finding to this issue is sufficient to impose joint and several liability against Glenn Hart, Ceres Corporation, and Rusty Acres, Inc., it would not do so against Joyce Hart.

However, as we have previously discussed, in response to Question 22, the jury found that Ceres Corporation and Rusty Acres, Inc. were the alter egos of both Glenn and Joyce Hart, and appellants have not perfected their right to complain about that finding. The effect of a finding of alter ego is to impute certain corporate liabilities to the shareholders, officers, or corporate agents when the identities of those parties are unified to the extent that separateness has ceased to exist. When an "alter ego" has been found to exist, the corporate structure may be disregarded and liability for torts committed by the corporation and liability for actual fraud based upon contractual agreements may be imputed and personal liability assessed. *Atlantic Richfield Co. v. Long*

*Trusts,* 860 S.W.2d 439, 447 (Tex.App.—Texarkana 1993, writ denied); *Leitch v. Hornsby,* 885 S.W.2d 243, 249 (Tex.App.—San Antonio 1994), *rev'd on other grounds,* 935 S.W.2d 114 (Tex.1996). Therefore, the jury's finding of alter ego in response to Question 22 is sufficient to justify the trial court's imposition upon Joyce Hart's personal liability for the joint and several liability allocated to Rusty Acres, Inc. and Ceres Corporation. With the exception of the portions of appellants' eighth point challenge which we have found to be well taken, their eighth point is overruled.

In response to Question 17, the jury found that appellants did not act "within their rights, as enumerated in the Lease Agreements, in declaring the Leases breached." In their sixteenth point, appellants contend that the jury's answer to that question was against the great weight and preponderance of the evidence. In determining whether the jury's answer was indeed against the overwhelming weight of the evidence, we must first determine whether there is some probative evidence to support the jury finding, and then determine if, in light of all the evidence, the finding is clearly wrong or manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

In support of their position, without additional specificity, appellants refer to their Exhibit No. 2, a chart that makes reference to specific evidence in the statement of facts. Appellants contend the chart shows that appellee had failed for over six months to pay an installment due on irrigation equipment, to use standard farming procedures to maximize the crop yield, in some instances abandoned crops by failure to water them, and failed to pay some of due crop percentage payments to appellants. In response, appellee points to his testimony that because the irrigation wells would not pump the amount of water appellants had represented to him would be pumped, the crop yield was affected. He also points to evidence that it was appellants' responsibility to install center drives on the sprinkler systems located on two of the sections but, at the time the growing wheat was "heading out," they had

not been installed. When appellants finally installed the drives, an entire "circle" of wheat had been lost.

Appellee also emphasizes the testimony of his witness Barry Hittson, a grain consultant who testified about the sprinkler problems and also verified that appellee was not a bad farmer. There was also testimony about a release of the 1994 wheat crop which had been prepared and signed by an officer of Rusty Acres, Inc. prior to notices of default sent by appellants. To further detail the voluminous testimony produced by both sides would unduly lengthen an already lengthy opinion. Suffice it to say, the testimony bearing on all material parts was conflicting and we cannot fault the jury's determination as to the weight and credibility they gave to the conflicting testimony. Accordingly, appellants' sixteenth point is overruled.

The disposition which we have made of appellants' sixteenth point foreshadows our disposition of their seventeenth point. In that point, they attack the jury's failure in Question 19 to award them damages for appellee's "breach of the lease agreements." Inasmuch as the jury had failed to find that appellants were entitled to declare the leases breached, and this question was conditioned upon a finding favorable to appellants on that issue, the jury was not required to answer Question 19. Therefore, no discussion of this point is necessary and it is overruled.

With the exception of appellants' first point, which is sustained, and the portions of appellants' other points of error which we have found to be well taken, appellants' points are overruled. In accordance with our disposition of those points, the trial court judgment is reformed to delete the alter ego findings as to the Kettle Corporation, Hart & Son, Joel Hart and Jeff Hart, the award of $9,391 damages for misrepresentation, and the $9,000 damage award for the conspiracy to defraud. *See* Tex.R.App. P. 80(b)(2). As reformed, the judgment is affirmed.