In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-226 CV


____________________



GREGORY NELSON and YANKEE ENTERPRISES, INC., Appellants



V.



GREG DYKEMAN, INDIVIDUALLY, and STRONG, PIPKIN, 


NELSON, BISSELL & LEDYARD, L.L.P., Appellees






On Appeal from the 136th District Court


Jefferson County, Texas


Trial Cause No. D-159,754






OPINION


 Yankee Enterprises, Inc. ("Yankee") (1) appeals the summary judgment and partial
summary judgment in favor of Greg Dykeman, individually, and Strong, Pipkin, Nelson,
Bissell & Ledyard, L.L.P.("Strong Pipkin"). In this case, Yankee presents legal
malpractice claims against appellees that allegedly occurred in an underlying federal
lawsuit. We affirm. 

 Yankee hired Dykeman and his law firm, Strong Pipkin, to represent Yankee on a
contingent fee basis in its federal suit against Dunkin' Donuts, Inc. ("Dunkin'"). Yankee
was a franchisee of Dunkin', and claimed Dunkin' breached the written franchise
agreement between them. Yankee contended some of the breaches violated the Texas
Deceptive Trade Practices Act ("DTPA"). See Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (Vernon 1987 & Supp. 2002). The jury found Dunkin' had failed to comply with
the franchise agreement and violated the DTPA. The jury awarded damages to Yankee. 
Dunkin' moved for judgment as a matter of law. The district court granted Dunkin's
motion on the DTPA claim, but rejected Dunkin's motion on the breach of contract claim. 
Both parties appealed. The Fifth Circuit partially reversed the district court's judgment
and ordered that Yankee take nothing from Dunkin'. Yankee Enters., Inc. v. Dunkin'
Donuts, Inc., 121 F.3d 703 (5th Cir. 1997). The Fifth Circuit concluded that Yankee
presented only a claim for breach of contract in support of its DTPA claim and affirmed
the district court order setting aside the verdict on the DTPA claim. The Fifth Circuit also
determined that any unfairness suffered by Yankee did not rise to the level of gross
unfairness, and affirmed the district court's order setting aside the jury's verdict on the
unconscionability prong of the DTPA claim. As to the breach of contract claim, the Fifth
Circuit concluded that Yankee presented no credible evidence to support the jury's finding
that the alleged breach by Dunkin' caused Yankee to suffer damages. Thus, the Fifth
Circuit reversed the judgment entered on the breach of contract claim and rendered a take
nothing judgment in favor of Dunkin'. 

 Alleging legal malpractice and breach of fiduciary duty, Yankee then filed this suit
against Dykeman and Strong Pipkin. After the trial court granted a partial summary
judgment in favor of the defendants as to the breach of fiduciary duty, Dykeman and
Strong Pipkin filed a motion for summary judgment on the negligence claim. Yankee
subsequently amended its pleadings to affirmatively abandon its cause of action for breach
of fiduciary duty. Granting the motion for summary judgment, the trial court ordered that
Nelson and Yankee recover nothing from Dykeman and Strong Pipkin. 

 In a traditional summary judgment motion, the movant has the burden of showing
there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. 
See American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). In deciding
whether there is a disputed material fact issue precluding summary judgment, evidence
favorable to the non-movant will be taken as true, and every reasonable inference must be
indulged in favor of the non-movant and any doubts resolved in its favor. Id. When the
trial court's order granting summary judgment does not specify the ground or grounds
relied on for its ruling, the appellate court affirms the judgment if any theory advanced has
merit. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993); Carr v.
Brasher, 776 S.W.2d 567, 569 (Tex. 1989). "On appeal, the movant still bears the burden
of showing that there is no genuine issue of material fact and that the movant is entitled to
judgment as a matter of law." Allen v. W.A. Virnau & Sons, Inc., 28 S.W.3d 226, 231
(Tex. App.--Beaumont 2000, pet. denied) (citing Nixon v. Mr. Property Management Co.
690 S.W.2d 546, 548 (Tex. 1985)).

 In seeking a "no-evidence" summary judgment under Rule 166a(i), a party may
move for summary judgment if, after adequate time for discovery, there is no evidence of
one or more essential elements of a claim or defense on which the non-movant would have
the burden of proof at trial. See Allen, 28 S.W.3d at 231; see Tex. R. Civ. P. 166a(i). 
The motion must state the elements as to which there is no evidence. Unless the non-movant produces summary judgment evidence raising a genuine issue of material fact, the
reviewing court must grant the motion. Id. As a no-evidence motion for summary
judgment essentially is a pretrial motion for instructed verdict, we apply the same standard
of review. Allen, 28 S.W.3d at 231. When reviewing the summary judgment record to
determine if there is legally sufficient evidence to raise a fact question on each of the
elements for which movant alleges there is "no evidence," we consider the evidence in
the light most favorable to the nonmovant. See Morgan v. Anthony, 27 S.W.3d 928, 929
(Tex. 2000); see also Tex. R. Civ. P. 166a(i) and cmt. A no-evidence summary judgment
is improper if the adverse party has produced more than a scintilla of probative evidence
raising a genuine issue of material fact on each challenged element of a claim or defense. 
But, evidence that is so weak as to do no more than create a mere surmise or suspicion of
a fact is "legally insufficient and constitutes no evidence." Allen, 28 S.W.3d at 231
(quoting Vallance v. Irving C.A.R.E.S., Inc., 14 S.W.3d 833, 836 (Tex. App.--Dallas
2000, no pet.)). However, the non-movant need not "marshal its proof"; rather it "need
only point out evidence that raises a fact issue on the challenged elements." Tex. R. Civ.
P. 166a(i) and cmt.; see Weiss v. Mechanical Associated Servs., Inc., 989 S.W.2d 120,
123-24 (Tex. App.--San Antonio 1999, pet. denied). 

 As a preliminary matter, we consider appellees' argument that this Court should
disregard all statements in Yankee's brief that are taken from Greg Nelson's affidavit. 
Relying on Blum v. Julian, 977 S.W.2d 819 (Tex. App.--Fort Worth 1998, no pet.),
appellees maintain the trial court implicitly sustained their objections to Nelson's affidavit
when it granted appellees' summary judgment. In Blum, the Fort Worth Court of Appeals
held the trial court implicitly overruled the plaintiff's objections to the defendant's
summary judgment proof when it granted the defendant's motion for summary judgment. 
Id. at 823-24. In a later case, the Fort Worth court also determined that the existence of
the movant's written objections along with a recitation that the court "reviewed all
competent summary judgment evidence," created an inference that the trial court implicitly
sustained objections to summary judgment evidence. See Frazier v. Yu, 987 S.W.2d 607,
610 (Tex. App.--Fort Worth 1999, pet. denied). Several courts of appeal have rejected
Blum and Frazier. See In re Estate of Loveless, 64 S.W.3d 564, 573 (Tex. App.--Texarkana 2001, no pet.); Jones v. Ray Ins. Agency, 59 S.W.3d 739, 752-53 (Tex. App.--Corpus Christi 2001, pet. filed); Well Solutions, Inc. v. Stafford, 32 S.W.3d 313, 317
(Tex. App.--San Antonio 2000, no pet.); Dolcefino v. Randolph, 19 S.W.3d 906, 926-27
(Tex. App.--Houston [14th Dist.] 2000, pet. denied). In comparing these cases, significant
factors include whether a matter of trial waiver or of appellate preservation was at issue,
and whether the party objecting to the summary judgment evidence was the one moving
for judgment. 

 In Blum, the trial court granted the defendant's summary judgment without
expressly overruling the appealing non-movant's objections to the movant's affidavit. The
appellate court held the ruling to be implicit for purposes of preserving error on appeal. 
Blum, 977 S.W.2d at 824; see Tex. R. App. P. 33.1(a)(2)(A). Loveless also concerned an
appealing non-movant's objections to the movant's affidavit. The appellate court held that
error had not been preserved because the overruling of the objections to the affidavit filed
in support of the regular motion for summary judgment was not implicit from the
judgment, which could have been based upon the alternate "no evidence" motion for
summary judgment. Loveless, 64 S.W.3d at 573.

 The cases in which the movant objected to the non-movant's affidavit more closely
resemble the appeal at hand. See Jones 59 S.W.3d at 752-53; Well Solutions, 32 S.W.3d
at 317; Dolcefino, 19 S.W.3d at 926-27. The movant was the appealing party in
Dolcefino. The appellate court presumed the trial court considered the appealing movant's
objections but could not discern from the record whether the trial court granted or
overruled the objections. Dolcefino, 19 S.W.3d at 926. The court considering Well
Solutions refused to imply a favorable ruling on the movant's objections from the mere fact
that it obtained a summary judgment. Well Solutions, 32 S.W.3d at 317. The Jones court
noted that the appellant was not required to anticipate an implied ruling on the appellee's
objections to her affidavit, and held that the appellees had waived their objections at the
trial level. Jones, 59 S.W.3d at 753. 

 Frazier also involved a movant's objections to the non-movant's affidavit. The
summary judgment recited that the court had considered all "competent" summary
judgment evidence. The appellate court reasoned that recital indicated the trial court had
sustained the objections. Since the appellant had no summary judgment evidence at trial,
the appellate court held that the granting of the "no evidence" motion for summary
judgment was proper. Frazier, 987 S.W.2d at 611. The problem with the rationale
employed in this opinion is that the ruling, whether express or implicit, was obtained not
by the party seeking review of error on appeal, but by the appellee. 

 Under the facts presented in this case, we decline to impose a rule that would
essentially require the appellant to preserve error regarding the opposing party's objections
to the summary judgment record. Absent a clear indication that the trial court actually
excluded evidence offered in accordance with Rule 166a, its inclusion in the record must
be presumed. We therefore consider Nelson's affidavit in our analysis of the issues raised
in this appeal.

 In its first issue, Yankee asserts the trial court erred in granting summary judgment
regarding Yankee's claims of negligence (professional malpractice) because genuine issues
of material fact exist as to each ground of the motion for summary judgment. Appellees
respond that:


 Yankee is claiming rescission damages that are not available in the
present suit; 




 Yankee failed to submit any evidence it would have prevailed in the
underlying suit, as it provided no evidence: 


 


 of being able to succeed with a "lost profits"
damage measure; 

 disputing that Yankee was claiming rescission was the
appropriate measure of damages that should have been
sought in the underlying federal suit; 

 disputing that Yankee was not entitled to rescission
damages in the underlying suit; or 

 any damage model would succeed or any amount of
damages would be recoverable; and 




 Appellees are not vicariously liable. 


 

 Appellees' arguments primarily address rescission issues that were the focus of
Yankee's superceded pleadings. Yankee's third amended petition pleaded there were
alternative forms of remedies on which the underlying suit should have been pleaded and
tried, one equitable and the other legal. The equitable remedy was again stated to be
rescission, and the legal damages for breach of contract were termed "out of pocket
damages," where the jury would be asked to find the difference between what Yankee paid
to Dunkin' and what it received. Thus, Yankee's pleadings clearly allege that remedies
other than rescission should have been sought in the underlying federal suit.

 Yankee's issue, as well as most of appellees' summary judgment grounds and some
of its responsive arguments, concern the remedies or the measure of damages Yankee
maintains should have been sought in the underlying federal suit. "Damages for breach of
contract protect three interests: a restitution interest, a reliance interest, and an expectation
interest." O'Farrill Avila v. Gonzalez, 974 S.W.2d 237, 247 (Tex. App.--San Antonio
1998, pet. denied); see Lafarge Corp. v. Wolff, Inc., 977 S.W.2d 181, 187 (Tex.
App.--Austin 1998, pet. denied). (2) At issue here is Yankee's reliance interest, the contract
theory equivalent for "out of pocket" damages. See Hart v. Moore 952 S.W.2d 90, 97
(Tex. App.--Amarillo 1997, pet. denied)(finding that out-of-pocket damages and reliance
damages are the same type of damages and that an award of both would be a prohibited
double recovery). Yankee contends that the summary judgment is improper because there
exists more than a scintilla of competent summary judgment proof that Dunkin's breach
of the franchise agreement was the producing cause of "out-of-pocket" damages to
Yankee. "Out-of-pocket damages measure the difference between the value the buyer has
paid and the value of what he has received." Arthur Andersen & Co. v. Perry Equipment
Corp., 945 S.W.2d 812, 817 (Tex. 1997).

 Yankee's summary judgment evidence offered in support of its damages theory for
the underlying suit included the affidavit of an expert, Herbert Lyon, who stated in
deposition:

 Well, it would go back to - in my way of thinking a very simple thing. If
they paid - if there was a breach found, as the jury did find, then, what is
the remedy? Well, they paid fees, about 9 percent or thereabouts, of their
income to Dunkin'. And so to use, I guess, a legal term one could argue
they really didn't get the benefit of the bargain if somebody had breached the
contract. So just give them their money back and make them whole. 


And as to the cost of remodeling the store, Lyon testified: "[W]e can agree that if he's no
longer a Dunkin' Donuts dealer, franchisee, the sign comes down, the store gets changed
in some way so we don't get it confused. Now, that cost money. . . ." Lyon agreed that
if Yankee were to recover all of the money it had paid to Dunkin', it would also have to
give back anything that it had benefitted from Dunkin'. Asked, "And do you have any
idea what the value of the franchise is?", Lyon replied, "No." Lyon had not calculated
the proper damage model and did not know the proper measure of damages. 

 Yankee also offered the affidavit testimony of its president, Greg Nelson, who
stated, in pertinent part: 


 "I was aware that Yankee had not earned the profits that it had in the
past."

 "I did not know how to measure damages. . . ."




 "I informed [Dykeman] that I did not know how to measure my
economic losses."




 I tried to understand the complicated elements of damages from what
I read, but I really could not decide what I was to do or how I could
help." 




 "I have computed that my economic losses and damages have been
approximately $500,000.00 pre trial, based on the difference between
the royalties fees and advertising fees paid to Dunkin' Donuts, less
what benefits Yankee received from the Franchise Agreement. In my
opinion, I did not receive any benefit from the Franchise Agreement
after the breach of the agreement commenced in 1990 when Allied
acquired Dunkin'." 




 I must re-identify the real property only, at a minimum cost of
approximately $125,000.00 so as to disassociate Yankee from
Dunkin'. In addition, I have elected not to cancel the franchise
contract with Dunkin'. . . ." (3)



 There is more than a scintilla of evidence of Yankee's expenditures made in
performing the contract, but no evidence of the value of the benefit it received, other than
Nelson's statement that, "In my opinion, I did not receive any benefit from the Franchise
Agreement after the breach of the agreement commenced in 1990 when Allied acquired
Dunkin'." The issue, then, is whether this statement is sufficient to establish the existence
of a fact issue. The appellees argue Nelson does not qualify as an expert and his assertion
that he received "no benefit" is without any stated basis in fact. 

 An owner of property is qualified to testify about the market value of his property. 
Porras v. Craig, 675 S.W.2d 503, 504 (Tex.1981). However, such testimony must show
that it refers to his knowledge of the market value, and is not merely based on his opinion
as to its intrinsic or some other value. Id. at 504-05. Conclusory statements unsupported
by facts are not competent summary judgment proof. Wright v. Greenberg, 2 S.W.3d 666,
675 (Tex. App.--Houston [14th Dist.] 1999, pet. denied); Rizkallah v. Conner, 952
S.W.2d 580, 587 (Tex. App.--Houston [1st Dist.] 1997, no writ). An affidavit consisting
only of conclusions is insufficient to raise an issue of fact. See Brownlee v. Brownlee, 665
S.W.2d 111, 112 (Tex. 1984). "An interested witness' affidavit which recites that the
affiant 'estimates,' or 'believes' certain facts to be true will not support summary
judgment. Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 122 (Tex. 1996) (holding that
a non-movant's supporting affidavit failed to raise a fact issue). See also Wadewitz v.
Montgomery, 951 S.W.2d 464, 466 (Tex. 1997)("[c]onclusory statements by an expert are
insufficient to support or defeat summary judgment."); Blan v. Ali, 7 S.W.3d 741, 748
(Tex. App.--Houston [14th Dist.] 1999, no pet.)(applying Wadewitz to "no evidence"
summary judgment). 

 Nelson's bare assertion that he received no benefit from his franchise agreement
with Dunkin' Donuts reveals no underlying facts which form the basis of his opinion. He
must be referring to intrinsic benefit, rather than actual benefit, because his affidavit also
states that Yankee continued to operate a profitable Dunkin' Donuts shop. Nelson also
negated the basis for his lay opinion testimony by stating that he did not have personal
knowledge of the proper computation of damages. Without an identified factual basis for
his opinion, Nelson's declaration is a mere statement of belief. We hold that Yankee failed
to submit more than a scintilla of competent summary judgment proof that Dunkin's breach
of the franchise agreement caused Yankee to pay more than it received under the franchise
agreement. As Yankee failed to submit any evidence that it would have prevailed in its
proof of damages in the underlying suit, the trial court did not err in granting summary
judgment on Yankee's malpractice claims against Dykeman. 

 Yankee sued Strong Pipkin solely under a theory of respondeat superior. The
appellant did not assert a claim of liability against Strong Pipkin independent of Dykeman's
individual liability. The firm's liability is contingent on Dykeman's liability. See Bossin
v. Towber, 894 S.W.2d 25, 33 (Tex. App.--Houston [14th Dist.] 1994, writ denied). If
Dykeman is not liable to Yankee, there can be no derivative liability to Strong Pipkin. Id. 
As summary judgment was properly entered in favor of Dykeman, it is also proper in favor
of Strong Pipkin. See Bradt v. West, 892 S.W.2d 56, 77-78 (Tex. App.--Houston [1st
Dist.] 1994, writ denied). Yankee's first issue is overruled.

 In its second issue, Yankee maintains the trial court erred in granting partial
summary judgment that negated Yankee's claims for breach of fiduciary duty as a matter
of law. The Plaintiff's Third Amended Petition, which Yankee filed after the second
motion for summary judgment was filed, deleted the allegations for breach of fiduciary
duty that had been included in its earlier pleadings. Yankee's "Response to Motion to
Strike", filed two days after it amended the pleadings, states, "Plaintiff has filed a Third
Amended Petition in this matter, removing allegations of breach of a fiduciary duty. The
matters relating thereto is now moot." Yankee intentionally and voluntarily abandoned its
claim for breach of fiduciary duty. A viable complaint on appeal is lost when, following
an allegedly erroneous ruling by the trial court on a claim, the plaintiff files an amended
pleading abandoning the claim upon which the trial court ruled. See Akin v. Santa Clara
Land Co., Ltd., 34 S.W.3d 334, 339 (Tex. App.--San Antonio 2000. pet. denied);
Randolph v. Walker, 29 S.W.3d 271, 274-75 (Tex. App.--Houston [14th Dist.] 2000, pet.
denied); Farmer v. Ben E. Keith Co., 919 S.W.2d 171, 173 (Tex. App.--Fort Worth 1996,
no writ); Direkly v. ARA Devcon, Inc., 866 S.W.2d 652, 655 (Tex. App.--Houston [1st
Dist.] 1993, writ dism'd w.o.j.); Radelow-Gittens Real Property Mgmt. v. Pamex Foods,
735 S.W.2d 558, 559 (Tex. App.--Dallas 1987, writ ref'd n.r.e.); Dolenz v. All Saints
Episcopal Hosp., 638 S.W.2d 141, 142 (Tex. App.--Fort Worth 1982, writ ref'd n.r.e.).
Yankee waived error, if any, in granting the partial summary judgment on Yankee's
breach of fiduciary duty allegations. Point of error two is overruled. The judgment is
affirmed.

 AFFIRMED. 


 ____________________________

 RONALD L. WALKER

 Chief Justice


Submitted on October 4, 2001

Opinion Delivered April 11, 2002

Do Not Publish


Before Walker, C.J., Burgess and Gaultney, JJ.



DISSENTING OPINION


 I respectfully dissent. The majority overrules the first issue because they hold "that
Yankee failed to submit more than a scintilla of competent summary judgment proof that
Dunkin's breach of the franchise agreement caused Yankee to pay more than it received
under the franchise agreement." Thus, neither Dykeman nor Strong Pipkin can be
potentially liable. I disagree.

 Yankee's expert, Herbert Lyon, in explaining how Yankee was hurt, stated:

 Well, it would go back to - in my way of thinking a very simple thing. If
they paid - if there was a breach found, as the jury did find, then, what is
the remedy? Well, they paid fees, about 9 percent or thereabouts, of their
income to Dunkin'. And so to use, I guess, a legal term one could argue
they really didn't get the benefit of the bargain if somebody had breached the
contract. So just give them their money back and make them whole. 


And as to the cost of remodeling the store, Lyon testified: "[W]e can agree that if he's no
longer a Dunkin' Donuts dealer, franchisee, the sign comes down, the store gets changed
in some way so we don't get it confused. Now, that cost money. . . ." 

 While Lyon did not use the words "out-of-pocket" damages, he states that Yankee
could have sought fees it paid to Dunkin,' or, in other words, Yankee could have sought
to recover payments it made in performance of the contract. Thus, Yankee could have
sought to protect its reliance interest. Even if Lyon's description of the recovery Yankee
could have sought does not use precise terminology, it is sufficient here to constitute more
than a scintilla of evidence that Yankee could have sought damages based on its reliance
interest. Moreover, a party who breaches its contract does not escape liability because the
non-breaching party cannot state or prove a "perfect measure of damages." Municipal
Admin. Servs., Inc. v. City of Beaumont, 969 S.W.2d 31, 38 (Tex. App.--Texarkana 1998,
no pet.). 

 Evidence that Yankee suffered reliance damages is found in the affidavit of Greg
Nelson, president of Yankee. Nelson testified that Yankee had been damaged
approximately $500,000 based on the difference between what it paid in royalty fees and
advertising fees and what it received as benefits from Dunkin' under the franchise contract. 
This is evidence of Yankee's expenditures made in performing the contract, and it is more
than a scintilla of evidence. 

 Thus, the majority's contentions that Yankee presented no evidence to avoid 
summary judgment are incorrect. Yankee has submitted more than a scintilla of evidence
of a damage model that would have been recoverable in the underlying suit, namely, its
reliance interest damages, or out-of-pocket damages. In addition, the majority's contention
that Strong Pipkin is not vicariously liable is premised on Yankee's not being able to
establish any cause of action against Dykeman, individually. As the summary judgment
was not proper in favor of Dykeman, neither is it proper in favor of Strong Pipkin. See
DeWitt v. Harris County, 904 S.W.2d 650, 654 (Tex. 1995)(the doctrine of respondeat
superior imposes liability on an employer when the negligence of its employee, acting in
the scope of his employment, is the proximate cause of another's injury). Yankee's first
issue should be sustained. 

 Therefore, I would affirm the trial court's summary judgment and partial summary
judgment as they relate to Gregory Nelson and in favor of appellees as to the breach of
fiduciary duty claim, but reverse the judgments as they otherwise relate to Yankee and
remand this cause to the trial court.




 DON BURGESS

 Justice


Dissent Delivered

April 11, 2002

Do Not Publish
1. Though Gregory Nelson, the president and sole shareholder of Yankee, filed a
notice of appeal, he did not file a brief and Yankee raises no issues on his behalf.
2. Yankee pleaded that the "lost profits"measure of legal damages could not be
proven. The "lost profits" measure, or expectation interest, is measured by the anticipated
receipts and losses caused by the breach less any cost or other loss the non-breaching party
has avoided by not having to perform. See Lafarge, 977 S.W.2d at 187 (citing
RESTATEMENT (SECOND) OF CONTRACTS § 347 (1981)). 
3. These last two statements contradict each other. If Yankee has elected to continue to
operate under the franchise agreement, there will be no cost to re-identify the property.